22435

The CITY OF ABBEVILLE, et al., Plaintiffs, v.
AIKEN ELECTRIC COOPERATIVE, INC., et al, Defendants.

(338 S. E. (2d) 831)

Supreme Court

*James M. Brailsford, III,* and *Frank R. Ellerbe, III,* of *Robinson, McFadden, Moore, Pope, Williams, Taylor, and Brailsford, P.A.,* Columbia, *for plaintiffs.*

*E. Crosby Lewis* and *Frank S. Potts,* of *Lewis, Lewis, Bruce & Truslow,* Columbia, and *John C. Lindsay,* of *Lindsay and Lindsay,* Bennettsville, *for defendants.*

*Robert E. Lyon, Jr.,* and *Roy D. Bates,* Columbia, *amicus curiae for Municipal Ass'n of South Carolina.*

*Francis P. Mood* and *Belton T. Zeigler,* of *Boyd, Knowlton, Tate & Finlay, Patricia T. Marcotsis,* Columbia, and *John A. Martin,* Winnsboro, *amicus curiae for South Carolina Elec. and Gas. Co., Inc.*

*Thomas E. McCutchen* and *Herbert W. Hamilton,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, and *C. H. McGlothlin, Jr.,* Moncks Corner, *amicus curiae for South Carolina Public Service Authority.*

Heard June 27, 1985.

Decided Dec. 30, 1985.

*Per Curiam:*

Plaintiffs, 88 muncipalities and Boards of Commissioners of Public Works (Cities), invoked the original jurisdiction of this court seeking a declaration of the constitutionality of Act 431 of the 1984 General Assembly (the Act). They contend that the Act contravenes S. C. Const. art. VIII, §§ 15 and 16.

Defendants are 22 rural electric cooperatives (Co-ops).

We hold the Act is constitutional.

## STATEMENT

The Act is one in a long line of statutes involving the relationships among Cities, private power companies and Co-ops. It specifically alters existing law relating to the rights of Cities and Co-ops to provide electric service in areas annexed by Cities and in areas newly incorporated.

Prior to the Act these rights were spelled out in S. C. Code Ann. § 58-27-1360 (1976) (original § 58-27-1360). Cities were empowered, at their option, to condemn and purchase the facilities of Co-ops whose territories, previously assigned by the Public Service Commission (PSC), became annexed. This power is termed the right of "ouster" in other jurisdictions.

The Act amends S. C. Code Ann. § 58-27-1360 (amended § 58-27-1360) to restrict the Cities' right to oust by the exercise of eminent domain. Under amended § 58-27-1360 condemnation may be instituted only after a PSC finding that existing Co-op service is inadequate, undependable or unreasonably discriminatory.

Cities contend, first, that the restriction in amended §58-27-1360 violates S. C. Const. art. VIII, § 15 (§ 15). They contend, second, that the Act, in denying to them the right of ouster, restricts an absolute right to operate electric utilities, granted to them by S. C. Const. art. VIII, § 16 (§ 16).

## ISSUES

The parties do not agree upon the language and form in which the issues should be framed.

The Co-ops view the question presented as:

> Does a municipality have the authority to remove the poles, lines and facilities of a franchised public utility in an assigned territory which has been annexed, when the legislature has not delegated by statute the power of eminent domain?

In their brief the Cities omit to set out any version of the questions raised, but argue violations of §§ 15 and 16 under two headings.

> I. Act 431 of 1984 violates Article VIII, § 15 of the Constitution of South Carolina.

II. Act 431 is an unconstitutional restriction upon the right given municipalities by Article VIII, § 16 to acquire and operate electric distribution systems.

While, as indicated in Cities heading I, the Act's constitutionality remains the ultimate decision, we view the Cities' challenge as presenting two basic issues for determination:

I. Whether § 15 is required to be applied both retrospectively and prospectively, or prospectively only, and II. Whether § 16 grants Cities an absolute and exclusive right to acquire and operate electric utilities within their incorporated areas.

## I. RETROSPECTIVE-PROSPECTIVE APPLICATION

Section 15, upon which Cities rely in support of their first contention, reads:

No law shall be passed by the General Assembly granting the right to *construct and operate* in a public street or on public property a[n] ... electric plant ... or to use the streets for any other facility, without *first obtaining* the consent of the governing body of the municipality in control of the streets or public places *proposed* to be occupied for any such or like purpose ... [Emphasis supplied].

Cities contend that, upon annexation or incorporation, S. C. Code Ann. §58-27-640 (1976), which mandates PSC assignment of service areas, becomes inoperative as to such areas. While conceding PSC jurisdiction in rural areas, they argue that, once these areas become annexed, the Cities have a constitutional right to grant or deny *continuation* of service by the Co-op.

In short, Cities interpret § 15 as granting to them the absolute right not only to refuse consent for new construction and operation but, in addition, to "oust" any entity providing service in an area at the time of its annexation or incorporation.

The effect of Cities' position is to construe § 15 as an exclusive franchising provision beyond reach of statutory legislation.

Prior to this litigation our Court has not been called upon to resolve the issues presented here. We necessarily look for assistance from decisions of their jurisdictions construing constitutional provisions similar to § 15.

The decision most closely on point is *Town of Culpeper v. Virginia Elec. & Power Co.*, 215 Va. 189, 207 S. E. (2d) 864 (1974). In *Culpeper* the town filed a declaratory judgment action to determine its right to oust two electric utilities, one a privately owned utility and the other a rural electric cooperative, from an area being served by them at the time of annexation. These two utilities were granted their territorial assignments by the Virginia State Corporation Commission, the counterpart of South Carolina's PSC.

In relevant part Va. Const. art. VII, § 8 reads:

> No ... electric light or power ... company [or] ... association ... shall be permitted to *use* the streets, alleys, or public grounds of a city or town, without the *previous* consent of the corporate authorities of such city or town. [Emphasis supplied].

The Virginia Supreme Court, in rejecting the town's claim of a right to oust, points to the intent of the constitutional prohibition against use of its streets without the town's permission:

> We think it clear that the intention of the framers of the constitutional provision in question was to empower towns to prohibit a utility from *entering* the town without prior consent. The intent was not to require the ouster of a utility and its facilities from an area where such facilities were already franchised and lawfully in existence and the utility was operating therein prior to such area becoming part of a town ... it is impossible ... to obtain 'previous' consent from the town. If we applied the section of the Constitution retroactively it would deprive [utilities] of their franchise to service the area in controversy, a franchise right which constitutes a valuable property right. [Emphasis by Court].
> 207 S. E. (2d) at 868.

The foregoing language in *Culpeper* clearly prohibits retrospective application of the constitutional requirement of consent.

A constitutional provision essentially the same as § 15 is art. XII, § 220 of the Alabama Constitution:

> No person, firm, association, or corporation shall be authorized or permitted to *use* the streets, avenues, alleys, or public places of any city, town or village for the *construction or operation* of any public utility or private enterprise, without *first obtaining* the consent of the proper authorities of such city, town or village. [Emphasis supplied].

In *Clarke-Washington Elec. Membership Corp. v. Alabama Power Co.*, 272 Ala. 598, 133 So. (2d) 488 (1961), the Alabama Supreme Court, as in *Culpeper*, construed the provision requiring municipal consent to apply prospectively only. Any expansion or extension of service, however, would be subject to the veto power of the municipality.

Inferably, the cooperative serving the annexed area would be permitted to continue operating its facilities as they existed at the time of annexation.

The same Court, in the earlier case of *Phenix City v. Alabama Power Co.*, 239 Ala. 547, 195 So. 894 (1940), held art. VII, § 220 does not operate as a self-executing authority for municipalities to grant franchises:

> [T]he power of a city to grant a franchise is by virtue of legislative authority. [Citations omitted]. Section 220, Constitution, is not a grant of such power, but the reservation of a restriction on legislative authority. And by it the State is not divested of its power to grant franchises *subject to the consent of the city affected.* [Emphasis supplied]. 195 So. at 899.

The holding in *Phenix City* counters the contention of the Cities here that the consent provision constitutes a grant of franchise rights.

We agree with the holdings in *Culpeper* and *Clarke-Washington* that the municipal consent provisions, as framed in the language of their Constitutions and § 15 of our Constitution, do not apply retrospectively to grant a right of ouster.

An analysis of the language in § 15 indicates that the consent requirement is prospective, not retrospective, in nature.

The law which the General Assembly is proscribed from enacting is one granting rights without "first obtaining" municipal consent. The public streets or properties in §15 are those on which it is "proposed" that facilities will be constructed and operated. "First obtaining" clearly is a condition precedent to the referenced event, and "proposed" is equally indicative of a future occurrence. Consent is required only at the time facilities are first erected. When service is initiated in rural areas there are no governing bodies of a municipality with whom to consult. Accordingly, obtaining consent at initial erection of facilities is impossible.

With respect to new construction after annexation or incorporation, § 3 of the Act amends S. C. Code Ann. § 58-27-670 (1976) relating to service in areas which become parts of municipalities. Amended § 58-27-670 contains the following provision:

> No poles, wires, or other facilities of electric suppliers using the streets, alleys or other public ways within the corporate limits of a municipality may be constructed by an electric supplier unless the consent of the municipal governing body is first obtained.

This sentence tracks the constitutional language of § 15 and, further, accords with our interpretation that § 15 was intended to be applied prospectively only. Moreover, Co-ops concede in their brief that, once annexation or incorporation is accomplished, they are prohibited from constructing new poles or wires without municipal consent.

We agree with the rationale of the Alabama Supreme Court in *Phenix City* that the power to franchise is an attribute of state sovereignty which can be delegated to municipalities *only* by statute. *See,* S. C. Code Ann. § 58-27-410 (1976). We view the language in *Phenix City* "subject to the consent of the city affected" as requiring consent prospectively, that is, for new construction after annexation or incorporation. The language in § 15 vests a veto power in the Cities, not a franchising authority.

The consent provision of § 15 is not an *affirmative* grant of franchise power, but is a *restriction* on legislative authority.

Eminent domain is an attribute of sovereignty and the general rule is that the legislature has the plenary power to grant or withhold the right. *Atkinson v. Carolina Power and Light Co.*, 239 S. C. 150, 121 S. E. (2d) 743 (1961). Even though eminent domain powers may be delegated to municipal corporations, they are not inherent. *Tuomey Hospital v. City of Sumter*, 243 S. C. 544, 134 S. E. (2d) 744 (1964). Once electric suppliers lawfully enter an area, annexation, in the absence of statutorily delegated powers of eminent domain, does not authorize an ouster. *Unity Light & Power Co., v. City of Burley*, 92 Idaho 499, 445 P. (2d) 720 (1968).

Amended § 58-27-670 contains the following sentence:

Annexation may not be construed to increase, decrease, or affect any other right or responsibility a municipality, rural electric cooperative, or electrical utility may have with regard to supplying electric service in areas assigned by the Public Service Commission in accordance with Chapter 27 of Title 58.

Cities express concern that this sentence will prevent any entity other than the assigned Co-op from supplying annexed or incorporated areas. However, under S. C. Code Ann. § 58-27-1230 (1976), no PSC permission is required for municipal electric utilities to operate within corporate limits. Other utilities may operate in such areas upon compliance with the PSC certification process. We interpret the above referenced sentence to preserve, not limit, all rights electric providers enjoy under the statutory scheme.

We hold that the Act, as incorporated into Title 58, Chapter 27 of the South Carolina Code, does not contravene § 15.

## II. MUNICIPAL RIGHT TO OPERATE UTILITY

Cities contend they have an absolute and exclusive right to operate electrical utilities, as provided in § 16:

Any incorporated municipality may, upon a majority vote of the electors of such political subdivision who shall vote on the question, acquire by initial

> construction or purchase and may operate ... electric ... utility systems and plants.

They contend, further, that the right granted them in § 16 includes an exclusive right to serve *all* customers within the city, a right which amended § 58-27-1360 makes contingent upon a PSC finding of deficient service.

In support of these positions Cities rely upon *Green v. City of Rock Hill*, 149 S. C. 234, 147 S. E. 346 (1929) and *Sossamon v. Greater Gaffney Metropolitan Utilities Area*, 236 S. C. 173, 113 S. E. (2d) 534 (1960). However, the statements in *Green* and *Sossamon* regarding municipal rights are dicta only. Subsequent cases have held that no absolute municipal right to operate utilities exists.

In *City of Orangeburg v. Moss*, 262 S. C. 299, 204 S. E. (2d) 377 (1974), we held that what is now § 16 was adopted to solve an ultra vires problem, and is not a limitation on the power of the state to regulate. We again cited this interpretation with approval in *Berry v. Weeks*, 279 S. C. 543, 309 S. E. (2d) 744 (1983). Under these holdings any exemption from regulation which municipal plants enjoy is statutory.

We hold that the General Assembly may, consistently with § 16, modify or abrogate this exemption.

## CONCLUSION

We accepted this declaratory judgment action in the Court's original jurisdiction because of its manifest and patent public importance to the parties litigant and, as well, to the general public. In their brief the Cities emphasize "[a]lthough there is significant disagreement about the constitutionality of this Act, all must agree that a prompt determination of its validity would be in the public interest."

The effect of our declaration that Act 431 of the 1984 General Assembly is constitutional is twofold. A franchisee possessing a valid PSC territorial assignment to serve an area subsequently annexed or newly incorporated:

> (1) Is permitted to continue service in that area to those premises being served as of the date of annexation or incorporation;

(2) Is prohibited, without prior consent of the municipality, from extending or expanding service in that area by the use of any streets, alleys, public property or public ways after the date of annexation or incorporation.

It is elementary that, when the constitutionality of a statute is challenged: (1) every presumption in favor of its validity must be made, and (2) the burden is upon the challenger to establish its unconstitutionality.[1]

Based upon our interpretation of § 15 of the constitution, Act 431 is a valid exercise of legislative authority to prohibit retrospective ouster but to require prospective consent.

Numerous parties indirectly affected by this litigation have filed amicus curiae briefs for the Court's added consideration.

The opposing briefs contain strong statements portraying dire consequences of a ruling adverse to either party. While these concerns do not unnoticed by this Court, we are constrained here to a judicial interpretation of the constitutionality of a legislative statute.

We do glean, however, from the contentions of all parties that they consider the furnishing of quality electric service to the customer an overriding imperative in this dispute. In respect of this we note again that §§ 2 and 5 of Act 431 charge the PSC with the duty of revoking the franchise of any electric supplier providing deficient service.

We cannot assume that the PSC, in whom the General Assembly has historically vested responsibility for assuring that electric suppliers deliver adequate service, will neglect its duty.

RHODES, A. A. J., sitting for GREGORY, A. J.

---

[1] *See* annotations of cases cited in 6 West's South Carolina Digest *Constitutional Law*, Key Nos. 48(1)-(8) (1985).