0920

Richard W. CONDON, Respondent v. BEST VIEW CABLEVISION, INC., (formerly known as Sareco, Inc., and/or Midland Cablevision, Inc.); Sareco, Inc., and Midland Cablevision, Inc., Appellants.

(355 S. E. (2d) 7)

Court of Appeals

*Henry L. Parr, Jr.,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellants.*

*Terrell L. Glenn, Wilmot B. Irvin,* and *Alison Renee Lee,* all of *McNair Law Firm,* Columbia, *for respondent.*

Heard Dec. 10, 1986.

Decided April 6, 1987.

BELL, Judge:

Richard W. Condon instituted this action against Best View Cablevision, Inc. to recover money due on two promissory notes. Best View set up various defenses and counterclaims. Condon moved for summary judgment, whereupon Best View filed a motion to amend its answer and counterclaims and a motion to add Joe L. Savitz, Jr., as defendant. After denying both of Best View's motions, the judge granted summary judgment in favor of Condon on the notes and the counterclaims and awarded Condon $168,504,59, including interest and attorney's fees. Best View appeals. We reverse the summary judgment on the second and third counterclaims, but otherwise affirm.

In 1974 Best View purchased a cable television system in Abbeville from Joe Savitz and his brother Allen. The sale was in the form of a stock purchase agreement and included transfer of the television cable franchise for the City of Abbeville, which expired in 1984. As part of the purchase price, Best View signed two promissory notes, promising to pay each brother $106,751.80. The Savitzes signed the stock purchase agreement on December 22, 1974. Sections three and five of that agreement are entitled "Representations and Warranties of Sellers" and "Representations, Warranties and Agreements of Sellers to be Performed Subsequent to Closing." The agreement also contained a ten year "Covenant not to Compete" and a clause entitled "Further Instruments and Actions," which required the Savitzes "to use their influence and goodwill with the City of Abbeville in aiding and assisting the Buyer with any legitimate request or problems Buyer may have with the City Government arising out of the franchise and Buyer's operations thereunder." Allen Savitz assigned his note to his brother Joe Savitz in 1977.

In June 1984, the City of Abbeville invited applicants to assume the cable service when Best View's franchise ex-

pired. Both Condon and Best View submitted applications. In his attempt to acquire the franchise, Condon secured the assistance of Joe Savitz, who contacted various city officials and prominent citizens on Condon's behalf and provided information on the city and its demographics. On July 31, 1984, Savitz assigned the two promissory notes to Condon.

After the Abbeville City Council awarded the franchise to Condon in August 1984, Best View inaugurated a campaign to reverse the council's decision. Condon, in turn, used mass mailings and newspaper advertisements to criticize Best View's past performance and to promise his service would be better.

When Best View failed to make its September payment on the promissory notes, Condon declared a default and demanded payment of the entire balance due. Best View refused to pay, and Condon commenced this action to recover $132,842.05 on the notes.

As a defense to the action, Best View alleged it was relieved of liability on the notes because Condon and Savitz had both violated the noncompetition clause in the stock purchase agreement. In addition, Best View counterclaimed against Condon for breach of the stock purchase agreement, common law unfair competition, and violation of the South Carolina Unfair Trade Practices Act.

After Condon made a motion for summary judgment, Best View moved to amend its answer to allege Joe Savitz had violated the "Further Instruments and Actions" clause of the agreement. Best View also moved to add Joe Savitz as a defendant to certain of the counterclaims.

The circuit judge denied Best View's motions and granted Condon's motion for summary judgment on all the issues. The judge awarded Condon $168,504.58, including the balance due on the notes, interest, and attorney's fees.

Best View now contends the circuit judge erred by granting summary judgment in favor of Condon on the notes and the counterclaims and by denying Best View's motions to amend its answer and to add Savitz as a defendant.

## I.

First Best View argues it was error for the judge to Grant summary judgment on the notes because (1) the judge er-

roneously interpreted the language of the notes and the covenant not to compete and (2) the judge failed to find that a breach of the covenant not to compete was also a breach of section five of the stock purchase agreement.

The trial judge properly held noncompliance with the covenant not to compete did not constitute a defense to Best View's liability on the notes. Each note states the "[o]bligations of the payors under this note shall be subject to compliance by the payee with their *representations and warranties* and their *representations, warranties and agreements to be performed subsequent to closing* contained in a stock purchase agreement of even date." (Emphasis added.) Sections three and five of the stock purchase agreement are entitled "Representations and Warranties of Sellers" and "Representations, Warranties and Agreements of Sellers to be Performed Subsequent to Closing." The identity of language in the two instruments, with the repetition of the words "representations" and "warranties," cannot be coincidental. The clauses in the notes clearly refer to sections three and five of the stock purchase agreement. Summary judgment may be granted when the only issue is the construction of a plain and unambiguous writing. *First-Citizens Bank & Trust Co. v. Conway National Bank*, 282 S. C. 303, 317 S. E. (2d) 776 (Ct. App. 1984). Since the notes condition Best View's liability only on compliance with sections three and five of the agreement, the alleged violations of section six, the noncompetition clause, do not by themselves constitute a defense.

Even if breach of the covenant not to compete were a defense to liability on the notes, under the facts of this case no breach could exist. The covenant stipulates the Savitzes "will not directly or indirectly own, manage, operate, join, control or participate in the ownership, management or control of, or be connected or interested, or engaged, in any manner, . . . with or in any corporation or other organization owning and operating a community antenna television system within the county limits of Abbeville, South Carolina." Because covenants not to compete are disfavored, they are strictly construed. *Collins Music Co. v. Parent*, 288 S. C. 91, 340 S. E. (2d) 794 (Ct. App. 1986); *Young v. Van Zandt*, Ind. App., 449 N. E. (2d) 300 (1983); *Gold &*

*Suckle, Inc. v. Suckle,* 335 So. (2d) 713 (La. App.), *cert. denied,* 338 So. (2d) 700 (La. 1976). A strict construction of the covenant in the stock purchase agreement prohibits only competition in connection with a "corporation or other organization owning and operating a community antenna television system within the county limits of Abbeville" between December 22, 1974 and December 22, 1984. The only corporation that owned and operated a cable television system in Abbeville during that period was Best View. The undisputed evidence shows Condon did not begin constructing his cable system until January 1985 and the first subscriber was not connected until the following month. Thus, any aid Savitz furnished Condon could not constitute a breach of the covenant.

Best View now argues, for the first time, that noncompliance with the covenant not to compete necessarily violates section five of the agreement and, thus, provides a defense on the note.

Because Best View failed to present this argument at trial, it is not properly before this court. *Santee Portland Cement Corp. v. Mid-State Redi-Mix Concrete Co.,* 273 S. C. 784, 260 S. E. (2d) 178 (1979). In any event, since we hold there was no violation of the covenant not to compete this argument cannot succeed.

For these reasons, we hold the trial judge properly awarded summary judgment on the notes in Condon's favor.

## II.

Best View next argues the judge erred in granting summary judgment on its counterclaims for common law unfair trade practices and violation of the South Carolina Unfair Trade Practices Act.

The circuit judge's order held all Best View's counterclaims must fail because "they all rest upon defendants' contention that plaintiff violated the terms of the covenant not to compete." Best View's answer alleged four counterclaims. While the first and fourth counterclaims relied on allegations of violation of the covenant not to compete, the second and third counterclaims, alleging common law unfair trade practices and violation of the South Carolina Unfair Trade Practices Act, were based on Best View's allegations

that Condon issued letters and advertisements disparaging Best View's business practices. Since there were triable issues of fact on these counterclaims, it was error for the judge to grant Condon's motion for summary judgment on the second and third counterclaims.

## III.

Best View also complains the trial judge erred in denying its motion to amend the answer and counterclaims to allege a violation of section 12 of the stock purchase agreement, entitled "Further Instruments and Actions." Since only violations of sections three and five of the agreement could provide a defense to liability on the notes, there was no error in the judge's denial of Best View's motion.

## IV.

Best View next contends the trial judge erred in denying its motion to add Joe Savitz as a defendant to its claims. Rule 13(h), SCRCP, provides: "Parties other than those to the original action may be made parties to a counterclaim or cross-claim in accordance with Rules 19 and 20." As the federal courts have construed the corresponding federal rule, additional parties may not be brought in for purposes of the counterclaims if the counterclaims are directed solely against the additional parties, and not against original parties. *United States v. Techno Fund, Inc.*, 270 F. Supp. 83 (S.D. Ohio 1967); *United States v. Zashin*, 160 F. Supp. 843 (E.D.N.Y. 1958); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1435 (1971). We agree with this interpretation. Rule 13(a) and (b) speak of counterclaims as claims against an opposing party. Claims asserted against a party not already in the action are not counterclaims, but independent causes of action. Nothing would be gained by adding parties for the sole purpose of adjudicating additional claims. The claims Best View's motion asserted against Savitz all relate to alleged violations of the stock purchase agreement. The only surviving claims against Condon, on the other hand, relate to his alleged disparagement of Best View's commercial practices. Since the claims asserted against Savitz are directed only against

him, and not against Condon, we hold the motion to add Savitz was properly denied.

## V.

Finally, Best View contends it was error for the judge ■ to award Condon attorney's fees of twenty-six thousand dollars. Each promissory note provided: "In the event of commencement of suit to enforce payment of this note, the undersigned agree to pay such additional sum as attorney's fees as the court may adjudge reasonable." The trial judge determined twenty-six thousand dollars was a reasonable amount. Since Best View was liable on the notes, it was also liable for reasonable attorney's fees as provided in the notes. *See Etiwan Fertilizer Co. v. Johns*, 208 S. C. 428, 38 S. E. (2d) 387 (1946).

Affirmed in part, reversed in part and remanded.

SHAW and CURETON, JJ., concur.