486 S.E.2d 92

**CITY OF CAYCE, Respondent,**

v.

**AT&T COMMUNICATIONS OF the SOUTHERN STATES, INC., Appellant.**

**No. 24626.**

Supreme Court of South Carolina.

Heard June 18, 1996.

Decided June 2, 1997.

238

H. Simmons Tate, Jr. and Francis P. Mood, of Sinkler & Boyd, P.A., Columbia;  Marc E. Manly and David W. Carpenter, of counsel; and Joseph R. Guerra and Bradford A. Berenson, of Sidley & Austin, Washington, DC, for appellant.

Danny C. Crowe, of Turner, Padget, Graham & Laney and Roy D. Bates, Columbia, for respondent.

Fred A. Walters, BellSouth Telecommunications, Inc. Legal Department, Atlanta, GA; Harry M. Lightsey, III, BellSouth Telecommunications, Inc. Legal Department, Columbia and William J. Quirk, of the University of South Carolina School of Law, Columbia, for Amicus Curiae, BellSouth Telecommunications, Inc.; and James E. Bryan, Jr., Laurens, for Amicus Curiae, Municipal Ass'n of South Carolina.

FINNEY, Chief Justice:

We agreed to answer two questions certified by the United States Fourth Circuit Court of Appeals concerning the powers of a municipality vis-a-vis interstate telephone fiber optic cable

installed within the municipality's corporate limits. In essence, the certified questions ask whether franchise powers can be exercised in circumstances where the utility provides no direct services to the municipality or its residents, and whether a fee may be charged. We hold the respondent (Cayce) may not require appellant (AT & T) to enter a franchise agreement as a condition of installing and maintaining this interstate cable, but that a fee may be imposed.

AT & T is a telecommunications common carrier which provides long distance services. In 1987, as part of an effort to upgrade its national long distance network, AT & T began installing major telecommunications fiber optic cable lines along four routes in South Carolina. During that year, AT & T laid cable in Cayce, complying with all the municipality's requirements. Unlike several other South Carolina municipalities, Cayce did not enact an ordinance requiring AT & T to enter a franchise agreement and pay franchise fees as a condition of installing the cable, but only required the purchase of a business license. AT & T was and remains, however, solely responsible for the construction, installation, maintenance, and servicing of the cable, and for all attendant costs to Cayce.

In May 1993, Cayce enacted a franchise ordinance and prepared a franchise agreement modeled on the ordinance and agreement used by the City of Columbia when AT & T laid fiber optic cable in that municipality. The Cayce ordinance and agreement essentially required AT & T to pay a one-time administrative fee of $3.00/linear foot of cable laid in the city limits and thereafter pay an annual fee of $2.00/linear foot. Cayce officials admit in depositions there is no correlation between the fees charged and any services provided to AT & T, admitting that in fact no services are provided. AT & T refused to execute the agreement or to pay the annual fee.[1]

In December 1993 Cayce filed suit seeking trespass damages and an injunction requiring AT & T to sign the franchise agreement and pay the annual fee. The United States District Court for South Carolina held Cayce had the authority to enact such an ordinance, enjoined AT & T to comply with Cayce's ordinance, and awarded Cayce trespass damages in

---

1. Cayce expressly waived the $3.00/linear foot administrative fee.

the amount of annual fees accrued since the effective date of the ordinance. AT & T appealed to the Fourth Circuit Court of Appeals.

■ The Fourth Circuit has certified two questions to the Court:

1. Does the municipal consent power provided by the South Carolina Constitution, Art. VIII, § 15, and the franchise authority provided by S.C.Code Ann. § 5–7–30 (Supp. 1995) permit a South Carolina municipality to impose a fee on a telephone utility for the privilege of installing and maintaining, in public right-of-ways beneath city streets, interstate fiber optic cable that provides no direct service to local residents?

2. Does S.C.Code Ann. § 58–9–2020 (1976) grant a telephone utility the right to construct and maintain such cables without payment of a fee to the municipality when the municipality provides no services other than the physical space for the use of the fiber optic cables?

This case requires that we reexamine the appropriate scope of municipal franchise authority. "What is the proper subject of a franchise depends largely upon existing conditions and the extent to which the public welfare is affected by the conduct of the business or enterprise in question." 36 Am.Jur.2d *Franchises* § 3 p. 725 (1968).

In South Carolina, municipalities have statutory authority to "grant franchises for the use of the public streets and make charges for them ...." S.C.Code Ann. § 5–7–30 (Supp.1995). Traditionally, governmental franchises are obtained by service-type businesses which seek the municipality's permission to do business with the municipality's citizens, and are willing to pay the municipality for this privilege.[2] Types of services which are typically franchised include electricity [e.g., *SCE & G v. Berkeley Elec. Coop. Inc.*, 306 S.C. 228, 411 S.E.2d 218 (1991)]; water and sewer services [e.g., *Touchberry v. City of Florence*, 295 S.C. 47, 367 S.E.2d 149 (1988)]; and cable

---

**2.** "Franchises have been regarded as special privileges granted by the government to particular individuals or companies to be exploited for private profits." 12 McQuillin *Municipal Corporations* § 34.01 (1949).

television [e.g., *Condon v. Best View Cablevision*, 292 S.C. 117, 355 S.E.2d 7 (Ct.App.1987) ].

▮ Here, unlike the traditional franchise situation, AT & T does not seek to operate a service business within Cayce's municipal boundaries whose primary clientele will be the city's residents and businesses. Instead, AT & T intends only for its cable to pass through Cayce's public streets, in furtherance of its national business. While undoubtedly there are some individuals and businesses in Cayce which have chosen AT & T as their long distance carrier, and undoubtedly some of their calls are routed through the interstate fiber optic cable laid under Cayce's streets, it cannot be contended that AT & T laid its cable in Cayce in order to operate a business serving the municipality's citizens. We hold the service relationship between Cayce's inhabitants and this interstate telephone cable is simply too attenuated to be characterized as a "franchise." *See AT & T v. Village of Arlington Heights*, 156 Ill.2d 399, 189 Ill.Dec. 723, 620 N.E.2d 1040 (1993).

▮ We turn now to the specific questions certified to us by the Fourth Circuit. The first asks whether the municipal consent power provided by the South Carolina Constitution, art. VIII, § 15, and the franchise authority provided by S.C.Code Ann. § 5–7–30 (Supp.1995) permit Cayce to impose a fee on AT & T. As we have explained above, Cayce has no ability to exercise its franchise authority under § 5–7–30 in these circumstances, and thus that statute cannot serve as the basis for the imposition of a fee. Article VIII, § 15, of the State Constitution provides, "No law shall be passed by the General Assembly granting the right to construct and operate in a public street a ... telephone [utility] ... without first obtaining the consent of the governing body of the municipality...." (emphasis added). We hold that pursuant to this constitutional consent provision, a municipality may require payment of a fee as a condition of permitting a telephone utility to construct and operate an interstate fiber optic cable using the city's streets. We note, however, this constitutional provision speaks to the necessity of municipal consent at the time the telephone facilities are constructed. *See City of Abbeville v. Aiken Elec. Coop.*, 287 S.C. 361, 338 S.E.2d 831 (1985). We emphasize that the only question certified, and

therefore the only question answered, is whether a municipality may condition consent to construction and operation upon payment of a fee. We are not asked, and therefore do not answer, the questions whether Cayce consented to the installation of this cable nor whether it can impose a fee five years after the cable was installed.

■ The second certified question asks whether S.C.Code Ann. § 58–9–2020 (1976) allows a telephone utility to construct and maintain this type of cable without payment of a fee to the municipality. This statute authorizes utilities such as telephone companies to "construct, maintain and operate" their lines under the public highways of this State provided they do so safely, and without interfering with others using the roadway. *Id.* This statute, which on its face appears to give telephone companies the unfettered right to build within the city's limits, must be read in light of S.C. Const. art. VIII, § 15, the constitutional consent provision, to limit the company's authority to situations where the municipality has consented. As noted above, that consent may be conditioned upon payment of a fee. Accordingly, we answer the second certified question in the negative: S.C.Code Ann. § 58–9–2020 does not authorize construction and operation of interstate fiber optic cables by a telephone utility without payment of a fee, where that fee is a condition of the municipality's constitutionality required consent.

In short, we answer the certified questions, (subject to the qualifications above): 1. Yes and 2. No. We stress that we are not asked to decide any factual disputes raised by this case, but rather are called upon to resolve abstract questions of state law. With emphasis once again upon the limited scope of this opinion, we

ANSWER THE CERTIFIED QUESTIONS.

TOAL, MOORE and WALLER, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.