522 S.E.2d 804

**BELLSOUTH TELECOMMUNICATIONS, INC., f/k/a Southern Bell Telephone and Telegraph Company, Appellant,**

v.

**CITY OF ORANGEBURG, Martin C. Cheatham, in his official capacity as Mayor of the City of Orangeburg and Member of its City Council, Bernard Haire, Marion F. Moore, W. Everett Salley, D.V.M., L. Zimmerman Keitt, Joyce W. Rheney, Sandra P. Knotts, and Paul A. Miller, in their official capacities as Present and or Past Members of the Orangeburg City Council, Respondents.**

**No. 25009.**

Supreme Court of South Carolina.

Heard Oct. 5, 1999.

Decided Nov. 8, 1999.

Rehearing Denied Dec. 15, 1999.

36

Fred A. Walters, Atlanta, Georgia, Caroline N. Watson, Columbia, William J. Quirk, Columbia, A. Camden Lewis, Keith M. Babcock, Lewis, Babcock & Hawkins, L.L.P., Columbia, for appellant.

James M. Brailsford, III, Robinson, McFadden & Moore, P.C., Columbia, James F. Walsh, Orangeburg, for respondents.

MOORE, Justice:

This appeal is from an order finding valid a franchise fee ordinance enacted by respondent City of Orangeburg (City). We affirm.

## FACTS

Appellant BellSouth Telecommunications, Inc. (BellSouth) commenced this declaratory judgment action attacking the validity of City's franchise ordinance enacted May 11, 1993. The ordinance requires BellSouth to pay a yearly franchise fee of 5% of its gross revenue earned within City and a one-time administrative fee[1] in exchange for BellSouth's use of the public streets for poles, wires, cables, and other equipment incidental to providing telephone service. The ordinance is effective through December 31, 2003.[2]

---

**1.** The administrative fee is 5% of BellSouth's gross revenue earned within City for 1992.

**2.** This case does not involve 1999 S.C.Act No. 112 which became effective June 30, 1999, and now controls municipal telecommunications franchise fees.

Prior to this 1993 ordinance, BellSouth operated under a 1894 franchise ordinance that allowed it to use the public streets to erect poles and wires and exempted BellSouth from "all municipal taxation, license or rentals" for a term of five years. Twenty years later, in 1914, the original franchise ordinance was expanded to include underground use of the public streets. The original five-year exemption from payment was not mentioned. BellSouth has never been obligated to pay a franchise fee until enactment of the 1993 ordinance.

In this action, BellSouth claimed the 1993 ordinance was invalid because (1) the franchise fee is really a "general revenue tax" which it claims City has no authority to enact and (2) the ordinance is inconsistent with the Constitution and general law of this State because it violates (i) the federal Telecommunications Act of 1996 which requires State law to conform to its requirements,[3] (ii) S.C.Code Ann. § 58-9-2020 (1976), and (iii) several constitutional provisions. On cross-motions for summary judgment, the trial judge found the ordinance valid and entered judgment for City. BellSouth appeals.

## ISSUES

1. Does City have authority to impose the ordinance fees on BellSouth?
2. Is the ordinance consistent with the Constitution and general law of this State?

## DISCUSSION

### 1. *Authority to impose franchise fees*

■ BellSouth contends the franchise fees provided in the 1993 ordinance actually constitute a "general revenue tax." BellSouth relies heavily on the fact that the revenue collected under the ordinance will go into City's general fund which, it argues, indicates the ordinance imposes a tax and not a fee. We disagree.

■ Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge

---

**3.** 47 U.S.C. § 253(d).

for a particular benefit to the payer. *Brown v. County of Horry,* 308 S.C. 180, 417 S.E.2d 565 (1992). Where a municipality seeks to justify a charge as a fee because the revenue generated by the charge is used for the payer's benefit, we will consider the fact that the revenue is placed in a municipality's general fund in deciding whether or not the payer specially benefits from imposition of the charge.[4] This factor is irrelevant, however, where the benefit to the payer derives not from the municipality's use of the revenue but is a benefit given directly and solely to the payor in exchange for the fee. In exchange for the fees imposed in this case, BellSouth is granted the special privilege of using public streets to place its equipment in order to serve City's residents and generate private profit.[5] The fact that the fees are placed in City's general fund is irrelevant.

Under S.C.Code Ann. § 5-7-30 (Supp.1998), a municipality is authorized "to grant franchises for the use of public streets and make charges for them." Accordingly, we find it is clearly within City's authority to impose these fees in exchange for the franchise rights granted BellSouth.

## 2. *Consistency with State law*

Under § 5-7-30, a municipal ordinance may not be "inconsistent with the Constitution and general law of this State." BellSouth contends the 1993 ordinance is inconsistent with State law on several grounds.

### a. Telecommunications Act

BellSouth contends the 1993 ordinance conflicts with the Telecommunications Act of 1996, 47 U.S.C. § 253(a).

---

4. Under *Brown,* for instance, a fee is valid as a uniform service charge if (1) the revenue generated is used to the benefit of the payers, even if the general public also benefits (2) the revenue generated is used only for the specific improvement contemplated (3) the revenue generated by the fee does not exceed the cost of the improvement and (4) the fee is uniformly imposed on all the payers.

5. A franchise has been defined as a special privilege granted by the government to particular individuals or companies to be exploited for private profits. *City of Cayce v. AT&T Communications of Southern States, Inc.,* 326 S.C. 237, 486 S.E.2d 92, 94 n. 2 (1997). Government franchisees are typically service-type businesses that are willing to pay the municipality for the privilege of doing business with its citizens. *Id.*

While this is a federal law, State law must conform to it, and therefore so must City's ordinance in order to pass muster under § 5–7–30. Section 253(a) provides:

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

The trial judge found no conflict with this section based on 47 U.S.C. § 253(c) which provides:

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require *fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis,* if the compensation required is publicly disclosed by such government.

The trial judge found this provision was satisfied because the only other telecommunications franchisee, a cable television company, paid the same fees. BellSouth, however, contends this provision does not validate the fees imposed under the 1993 ordinance because BellSouth is the only telephone service provider that must pay. We disagree.

BellSouth is the only telephone service provider required to pay these fees because it is the only telephone service provider that holds a franchise for private use of the public streets.[6] The fees charged BellSouth are therefore non-discriminatory as required under the Telecommunications Act.

■ BellSouth further contends the 1993 ordinance violates § 253(c) because it contains provisions that exceed a local government's power under that section "to manage the public rights-of-way." BellSouth cites the ordinance's provision that it maintain or remove its "facilities" and give notice of merger or corporate restructuring.

In context, nothing in the ordinance applies to BellSouth's "facilities" other than those placed in the public street pursu-

---

6. The record indicates that City has its own communications lines to control different utility systems by computer from a central location. A private telephone service provider, MPX, pays for use of these lines.

ant to the franchise [7] which is clearly within City's power to manage its rights-of-way as permitted under § 253(c).

Moreover, BellSouth's reliance on *AT & T Communications of the Southwest, Inc. v. City of Dallas*, 8 F.Supp.2d 582 (1998), for the proposition that a local government's power under § 253(c) is strictly limited to managing the right-of-way is misplaced. In that case, the federal district court interpreted § 253(c) and found municipalities *"absent explicit delegation by the state legislature ...* do not have the more general authority to regulate to protect public safety and welfare." *Id.* at 590 (emphasis added); *see also Bell Atlantic–Maryland, Inc. v. Prince George's County, Maryland,* 49 F.Supp.2d 805, 814 n. 23 (D.Md.1999) (noting local government did not seek to justify franchise ordinance as an exercise of regulatory powers reserved to the states and delegable to local government under § 253(b)). South Carolina has delegated to municipalities the power to enact ordinances "necessary and proper for the security, general welfare, and convenience of the municipality or for preserving health, peace, order, and good government in it." § 5–7–30. This power includes the ability to ensure that the grant of franchise privileges operates to the benefit of the public. City's ordinance merely requires Bell-South, as its franchisee, to make reasonable effort to provide the service that is the subject of its franchise.

Similarly, the ordinance's requirement that BellSouth give notice of mergers and corporate restructuring is a reasonable exercise of its authority over its franchise for the good of the public welfare as a means of ensuring notice of a possible change in service.

■ Finally, BellSouth complains the franchise fees, based on a percentage of its gross revenue, are not "fair and

---

7. Section 6 of the ordinance reserves to City the right under certain conditions to require BellSouth to relocate those "facilities erected or maintained pursuant to the privilege granted herein." Section 5 of the ordinance requires BellSouth to "maintain its facilities in a reasonable operating condition at all normal times" and requires City to "do all things reasonably within its power" to restore normal service when a disruption occurs. Although the word "facilities" is not specifically defined in § 5, it inferably includes only those facilities placed in the public street since, in context, that is how the word "facilities" is used throughout the ordinance.

reasonable compensation" for use of the public rights-of-way as required under § 253(c). Again, BellSouth's reliance on *AT & T v. City of Dallas, supra,* to support its argument is misplaced. In that case, the federal district court found the municipality's percentage-based fee exceeded its authority to impose fees because *Texas state law* prohibited municipalities from charging franchise fees for certain services (such as long-distance service) that were included as sources of revenue for calculating the percentage fee. 8 F.Supp.2d at 593. Here, City's authority to charge franchise fees under § 5–7–30 is not so limited and there is nothing in the record to indicate the percentage is not fair and reasonable.

Further, we are aware of a split of authority in the federal courts regarding whether municipal franchise fees must be limited under § 253(c) to the municipality's cost of maintaining the public rights-of-way used by the telecommunications utility. *Compare Bell Atlantic,* 49 F.Supp.2d 805 (limiting fees to costs incurred) *and TCG Detroit v. City of Dearborn,* 16 F.Supp.2d 785 (E.D.Mich.1998) (upholding percentage of revenue fee). We find that a franchise fee equal to a percentage of the revenue generated is not inherently unfair or unreasonable as a measure of the franchise's value as a business asset to the franchisee. Absent any evidence that the *amount* of the percentage is unfair, we decline to find the fees in this case violate the Telecommunications Act.

### b. § 58–9–2020

■■■ BellSouth next contends the 1993 ordinance is inconsistent with general State law because it violates S.C.Code Ann. § 58–9–2020 (1976) which provides in pertinent part:

Any telegraph or *telephone company* incorporated under the laws of this State ... *may construct, maintain and operate its line* through, upon, over and under any of the public lands of this State, *under, over, along and upon any of the highways or public roads of the State,* over, through or under any of the waters of this State, on, over and under the lands of any person in this State and along, upon and over the rights of way of any railroad or railway company in this State....

This statute, enacted in 1899, must be read in conjunction with article VIII, § 15, of our State Constitution which provides:

> No law shall be passed by the General Assembly granting the right to construct and operate in a public street a . . . telephone [utility] . . without first obtaining the consent of the governing body of the municipality. . . .

This constitutional provision limits a telephone utility's right to use public streets under § 58–9–2020 by requiring a municipality's consent at the time the telephone facilities are constructed. *City of Cayce v. AT&T Communications of Southern States, Inc.*, 326 S.C. 237, 486 S.E.2d 92 (1997); *City of Abbeville v. Aiken Elec. Coop.*, 287 S.C. 361, 338 S.E.2d 831 (1985). Article VIII, § 15, does not bestow upon municipalities the power to oust existing utilities. *Abbeville v. Aiken Elec. Coop., supra.* Accordingly, BellSouth argues, City has no power under § 58–9–2020 to oust it by imposing fees for the continuation of its franchise.

First, there is no evidence the imposition of the fees in question would actually force an ouster of BellSouth from its service of City's residents. Moreover, § 5–7–30, which was enacted subsequently to § 58–9–2020 pursuant to the Home Rule Amendment, specifically delegates to municipalities the power to "grant franchises for the use of public streets and make charges therefor" and it does not limit City's authority to impose fees on a formerly gratuitous franchise.[8] This section therefore modifies the impact of § 58–9–2020 by delegating to municipalities the franchise power over public streets.[9] Since the rights granted telephone utilities under

---

[8]. While we have determined the extent of municipal power over public streets under article VIII, § 15, and § 58–9–2020, we have not previously determined the impact of § 5–7–30. In *City of Cayce v. AT&T Communications, supra,* we specifically noted that because the telephone utility was not seeking to provide service to the municipality's residents, the use of public streets was not a franchise and the municipal franchise power under § 5–7–30 did not apply. In *Abbeville v. Aiken Elec. Coop., supra,* we did not discuss § 5–7–30 but held article VIII, § 15, was not an affirmative grant of franchise power to municipalities such that a municipality could oust an existing utility in a subsequently annexed area. Finally, in *City of Aiken v. Aiken Elec. Coop.,* 305 S.C. 466, 409 S.E.2d 403 (1991), we held under article VIII, § 15, a municipality has the power to deny a new franchise but we did not examine the effect of § 5–7–30 on the municipality's franchise power.

[9]. *See Abbeville v. Aiken Elec. Coop., supra* (the power to franchise is an attribute of state sovereignty delegated to municipalities by statute).

§ 58–9–2020 were restricted by enactment of § 5–7–30 under which franchise fees are permitted, there is no violation of § 58–9–2020.

### c. Constitutional provisions

 BellSouth contends the 1993 ordinance is inconsistent with federal and State equal protection, due process, and impairment of contract clauses. We disagree.

First, BellSouth complains of an equal protection violation because it is the only business that must pay the franchise fees, which BellSouth characterizes as a "tax." As discussed above, these fees do not constitute a tax but are charged in exchange for a specific benefit directly conferred *i.e.*, use of the public streets for the placement of BellSouth equipment. BellSouth does not contest that it is charged the same fees as the only other franchisee, a cable television provider. Accordingly, BellSouth has failed to show any disparate treatment of similarly situated entities. *See TNS Mills, Inc. v. South Carolina Dept. of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998) (in order to show an equal protection violation, a party must show that similarly situated persons received disparate treatment).

 Second, BellSouth contends the forced imposition of the franchise fees constitutes a taking of property without just compensation in violation of due process. There is no evidence the imposition of these fees will force BellSouth to abandon its franchise or that its property would retain no value if the franchise is terminated. BellSouth has failed to show a taking in this case. *See Long Cove Club Assoc. v. Town of Hilton Head Island*, 319 S.C. 30, 458 S.E.2d 757 (1995) (no taking of personal property if property retains some value).

 Finally, BellSouth contends the 1993 ordinance is inconsistent with the constitutional protection against the impairment of contract. BellSouth argues it had a contract with the State pursuant to § 58–9–2020 to use any public streets in the State and therefore its use of City's streets could not be subsequently impaired by the 1993 ordinance.

BellSouth mischaracterizes its relation to the State as a contractual one regarding the use of City's streets. Although

there are exceptions, statutes generally do not create contractual rights and in the absence of a contract, there is no violation of the Contract Clause. *Alston v. City of Camden*, 322 S.C. 38, 471 S.E.2d 174 (1996). The terms of § 58–9–2020 create no contractual obligation between the State and Bell-South and we find no impairment of contract.

Accordingly, the judgment of the circuit court finding City's franchise ordinance valid is

**AFFIRMED.**

TOAL, Acting C.J., WALLER, BURNETT, JJ., and Acting Associate Justice WILLIAM T. HOWELL, concur.