596 S.E.2d 482

**SOUTH CAROLINA ELECTRIC & GAS CO. and Scana Corp., Respondents,**

v.

**TOWN OF AWENDAW and Berkeley Electric Cooperative, Inc., Petitioners.**

No. 25820.

Supreme Court of South Carolina.

Heard Feb. 5, 2004.

Decided May 11, 2004.

William B. Regan and Frances I. Cantwell, of Regan and Cantwell, LLC, of Charleston; and Dwayne M. Green of Hampton Green, LLC, of Charleston, for Petitioner Town of Awendaw; and Michael A. Molony, Stephen L. Brown and Lea B. Kerrison of Young, Clement, Rivers & Tisdale, L.L.P., of Charleston, for Petitioner Berkeley Electric Cooperative, Inc.

James B. Richardson, Jr., of Richardson & Birdsong; Catherine D. Taylor of South Carolina Electric & Gas Co.'s Legal Department; and Patricia T. Smith, all of Columbia, for Respondents.

Danny C. Crowe, of the Municipal Association of South Carolina, Columbia; and James M. Brailsford, III, of Edisto Island, for Amicus Curiae.

Justice BURNETT:

We granted the petitions of Town of Awendaw (Town) and Berkeley Electric Cooperative, Inc. (BEC) for a writ of certiorari to review the Court of Appeals' decision in *South Carolina Elec. & Gas Co. v. Town of Awendaw*, 351 S.C. 491, 570 S.E.2d 542 (Ct.App.2002). We reverse.

## FACTS

Rural electrical cooperative BEC provided service to all of Town's residents when Town was incorporated in 1992. About

1,033 residents live in Town, located in northern Charleston County. Town enacted an ordinance and adopted a franchise agreement in 1993 which designated BEC as the primary supplier of electricity to Town and granted BEC the right to use public streets to construct and maintain its facilities. In exchange, BEC agreed to pay Town an annual franchise fee equaling three percent of its gross revenues from the sale of electricity within Town's limits.

Town subsequently annexed the property of residents who are served by South Carolina Electric & Gas Co., a wholly owned subsidiary of SCANA Corp. (collectively, SCE & G). Some twenty-six residential customers inside Town's limits are now served by SCE & G, which has about 770 feet of line on four poles located along public streets in Town's limits. SCE & G served those customers prior to annexation because they were located within unincorporated areas previously assigned to the company by the S.C. Public Service Commission pursuant to S.C.Code Ann. § 58–27–640 (1976).

Town requested SCE & G enter into a franchise agreement. Town and SCE & G unsuccessfully attempted to negotiate the terms of such an agreement from 1995 to 1999. In late 1998, Town enacted a business license ordinance. That ordinance imposed franchise fees of three percent of gross revenues collected on sales within Town's limits on various utility providers, including electrical utilities. SCE & G paid franchise fees to Town under protest, paying $941 in 1999 and $760 in 2000.

In 1999, SCE & G initiated a lawsuit challenging Town's authority to impose a franchise fee on SCE & G's operations in Town's limits in the absence of a franchise agreement.[1] BEC intervened in support of Town. SCE & G subsequently moved for summary judgment, arguing because it had no

---

1. The parties' initial efforts to resolve the dispute before the Charleston County Business License/Users Fee Appeals Board and their original court pleadings focused on the legitimacy of Town's imposition of a business license tax. Town amended its Answer to clarify it was imposing a franchise fee—not a business license tax—following the deposition of expert Roy D. Bates and the publication of *BellSouth v. City of Orangeburg*, 337 S.C. 35, 522 S.E.2d 804 (1999). The parties, as well as the trial court and Court of Appeals, all have addressed the legitimacy of the fee as a franchise fee, not a business license tax.

franchise agreement with Town, Town had no authority to unilaterally impose a franchise fee on SCE & G. SCE & G asserted, *inter alia,* the resolution of the issue is controlled by *City of Abbeville v. Aiken Elec. Co-op., Inc.,* 287 S.C. 361, 338 S.E.2d 831 (1985). Town also moved for summary judgment, contending the franchise fee was proper under state law and relying primarily on *BellSouth v. City of Orangeburg,* 337 S.C. 35, 522 S.E.2d 804 (1999).

The master-in-equity granted Town's motion for summary judgment, concluding the franchise fee is proper under state law and *BellSouth, supra.* The Court of Appeals reversed, interpreting *City of Abbeville, supra,* to prohibit the municipality's unilateral imposition of a franchise fee because an existing utility provider is allowed to continue serving its existing customers after annexation. The Court of Appeals' majority distinguished *BellSouth,* reasoning that case did not apply because Town and SCE & G never had entered into a franchise agreement, unlike the utility and municipality in *BellSouth.* The dissenting judge would have relied on *BellSouth* to conclude the imposition of the franchise fee was proper, provided it was not so unreasonable that it amounted to ouster of an existing utility provider following annexation pursuant to *City of Abbeville.*

## STANDARD OF REVIEW

"In reviewing the grant of a summary judgment motion, this Court applies the same standard which governs the trial court under Rule 56, SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). "In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Id.* "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Id.*

## ISSUE

Did the Court of Appeals err in holding Town lacked the authority to impose a franchise fee on an electrical utility provider in the absence of a franchise agreement?

## DISCUSSION

■ Town asserts the Court of Appeals misinterpreted state law and this Court's precedent to err in holding Town lacked the authority to impose a franchise fee on SCE & G in the absence of a franchise agreement. We agree.

■ Governmental franchises typically are obtained by service-type, monopolistic businesses such as electricity, water, telephone, and cable television providers. A franchise constitutes a special privilege granted by the government to particular individuals or companies to be exploited for private profits. Such franchisees seek permission to use public streets or rights of way in order to do business with a municipality's residents, and are willing to pay a fee for this privilege. *Quality Towing, Inc. v. City of Myrtle Beach,* 345 S.C. 156, 165, 547 S.E.2d 862, 867 (2001); *City of Cayce v. AT&T Communications,* 326 S.C. 237, 486 S.E.2d 92 (1997); *State ex rel. Daniel v. Broad River Power Co.,* 157 S.C. 1, 153 S.E. 537, 548 (1929). While a franchise is a privilege, it also is viewed as a function delegated to private individuals to be performed for the furtherance of the public welfare and subject to public control. 12 *McQuillin Mun. Corp.* 34.01 (3d ed.1995).

A municipality in South Carolina may enact ordinances and regulations which grant franchises for the use of public streets and make charges for them, provided the ordinances and regulations are consistent with the Constitution and general law of the state. S.C.Code Ann. 5–7–30 (Supp.2003). The state Constitution vests the authority to make such decisions in a municipality's governing body. *See* S.C. Const. art. VIII, 15 (prohibiting Legislature from enacting any law which grants the right to a utility provider to construct, operate, or use the public streets or public property without first obtaining the consent of the municipality).

■ When an area is incorporated into a new municipality or annexed into an existing one, the municipality may not oust

or evict a utility provider which previously has lawfully served the area, in the absence of statutorily delegated powers of eminent domain authorizing such an ouster. *City of Abbeville,* 287 S.C. at 370–371, 338 S.E.2d at 836 (construing S.C. Const. art. VIII, 15 and S.C.Code Ann. 58–27–670, and rejecting challenges to legitimacy and constitutionality of amended statute which restricts municipality's right to oust existing utility providers by exercising eminent domain).

■ Under *City of Abbeville,* a franchisee possessing a valid territorial assignment to serve an area subsequently annexed or newly incorporated is permitted to continue serving premises in that area which were being served as of the date of the annexation or incorporation. However, the franchisee is prohibited, without prior consent of the municipality, from extending or expanding service in that area by the use of any streets, alley, public property, or public ways after the date of the annexation or incorporation. *Id.*

In *BellSouth,* we concluded a municipality may exercise its authority under 5–7–30 to unilaterally impose a franchise fee on a utility provider even though no such fee had ever been imposed during the existence of a long-term franchise agreement. *BellSouth,* 337 S.C. 35, 522 S.E.2d 804. In that case, BellSouth operated under an 1894 franchise ordinance that allowed it to use the public streets of the city of Orangeburg to erect poles and wires and exempted BellSouth from all municipal taxation, licenses, or rentals for a term of five years. The original franchise agreement was expanded in 1914 to include underground use of public streets, but again no fee was required. BellSouth never had been obligated to pay a franchise fee until the city of Orangeburg enacted one by ordinance in 1993, ninety-nine years after the original agreement. *BellSouth,* 337 S.C. at 38–39, 522 S.E.2d at 806.

We upheld the unilaterally imposed franchise fee, rejecting BellSouth's arguments the fee actually is an impermissible tax, it conflicted with federal telecommunications law, the ordinance exceeded the municipality's power to manage public rights of way, the fee was not fair and reasonable, and it violated a state statute which granted telephone companies the right to construct and maintain its lines along public highways. We concluded the franchise fee was consistent with the state

Constitution and state and federal law. *Id.* at 39–46, 522 S.E.2d at 806–809.

Neither *BellSouth* nor *City of Abbeville* directly answers the question presented in this case, i.e., whether Town may impose a franchise fee on SCE & G in the absence of a franchise agreement. *BellSouth* is not directly on point because, as recognized in the Court of Appeals majority and dissenting opinions, the franchise fee was unilaterally imposed by a municipality with an existing franchise agreement with the utility provider. *City of Abbeville* stands for the proposition that a utility provider's right to serve its present customers continues upon annexation or incorporation, but does not address the fee issue.

■ We conclude that in areas which are subsequently annexed or newly incorporated, a new relationship is created by operation of law between the municipality and the existing utility provider. The new relationship is municipality as franchisor and utility provider as franchisee, although the relationship obviously is more limited in scope and nature than the typical franchisor-franchisee relationship due to the lack of a franchise agreement.

We base our decision primarily on 5–7–30, which authorizes a municipality to make charges for the use of public streets, and on *City of Abbeville, supra.* The existing utility provider has the right to continue serving its existing customers in subsequently annexed or newly incorporated areas, and the municipality is prohibited from ousting the utility provider, as we decided in *City of Abbeville.* The utility provider does not, however, have the right to continue using public streets which have come under the purview and control of the municipality in pursuit of the utility's for-profit business interests without payment of a reasonable fee to the municipality.

Accordingly, a municipality may, consistent with 5–7–30 and S.C. Const. article VIII, 15, impose by ordinance a reasonable franchise fee on an existing utility provider in subsequently annexed or newly incorporated areas. The amount of such a fee must be reasonable, as an inordinate fee would be unreasonable and could constitute ouster pursuant to *City of Abbeville, supra. See also BellSouth,* 337 S.C. at 44, 522 S.E.2d at 808 (finding no evidence imposition of annual franchise fee of

five percent of gross revenue and one-time administrative fee would actually effect an ouster of BellSouth from its service of city residents).

This result is consistent with *BellSouth, supra.* While a franchise agreement existed in that case, the municipality's imposition of a franchise fee without the utility providers consent admittedly was an important and substantive change in the agreement. We consistently have taken the view a utility provider generally should not be allowed free use of a municipality's streets in light of the constitutional and statutory authority reserving or granting power to municipalities to impose charges for such use. *See City of Cayce,* 326 S.C. 237, 486 S.E.2d 92 (holding the municipal consent power provided by Article VIII, 15 of the constitution allows a municipality, before facilities are constructed, to require payment of a fee as a condition of permitting a telephone utility to construct and operate a fiber optic cable system using public streets, even though fee could not be imposed as a franchise fee because service relationship between municipality and utility was too attenuated to be characterized as a franchise); *see also Athens–Clarke County v. Walton Elec. Membership Corp.,* 265 Ga. 229, 454 S.E.2d 510, 512–513 (1995) (payment of a franchise fee is a plausible prerequisite to the grant of a franchise; therefore, municipality may impose a franchise fee in the absence of a franchise agreement when the municipality enacts a franchise ordinance conditioning the future grant of a franchise on the payment of a reasonable franchise fee).

■ We do not conclude a municipality may unilaterally impose a franchise agreement on a utility provider. Various terms and conditions of an agreement generally are set forth in a written, enforceable contract between the municipality and the franchisee. *See* 12 *McQuillin* 34.06, 34.45 and 34.45.10; 2 *Antieau on Local Government Law* § 28.01 (2d ed.2003). A municipality does not have the authority to force a utility provider to accept a franchise agreement. *See* 12 *McQuillin* 34.74 (municipality may not, under pretense of regulation as exercise of police power, force a franchise agreement on a utility provider); 2 *Antieau* 28.01 and 28.05 (general rule is that franchise agreement must be accepted by franchisee in order to be valid).

■ Therefore, a municipality may impose a reasonable franchise fee, contained in a duly enacted ordinance, on an existing utility provider in subsequently annexed or newly incorporated areas. The municipality and utility provider remain free to negotiate terms and enter into a traditional franchise agreement to be adopted in the usual fashion by a franchise ordinance. *See Quality Towing,* 345 S.C. at 165–167, 547 S.E.2d at 867 (franchise contract between city and single company, which granted single company the exclusive right to charge the public for a vendors services, was a classic example of a franchise; however, the contract was invalid because the city had not granted the franchise by enacting an ordinance as required by statute).

In the present case, a limited relationship of franchisor and franchisee was created by law when Town annexed areas served by SCE & G. Town has imposed a franchise fee on SCE & G of three percent of gross revenue the company earns from the sale of electricity within Towns limits. The fee imposed on SCE & G is the same Town collects from BEC under a franchise agreement, and the record reveals it is comparable to franchise fees imposed by other municipalities across South Carolina. Town imposed the fee in a duly enacted business license ordinance. Accordingly, the franchise fee is a lawful obligation of SCE & G.

## CONCLUSION

We reverse, concluding a municipality may, consistent with 5–7–30 and S.C. Const. article VIII, 15, impose by ordinance a reasonable franchise fee on an existing utility provider in subsequently annexed or newly incorporated areas. We remand this matter to the circuit court for entry of summary judgment in favor of Town.

**REVERSED.**

TOAL, C.J., MOORE, PLEICONES, JJ., and Acting Justice ALEXANDER S. MACAULAY, concur.