23632

THE CITY OF ROCK HILL, Respondent v. The PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA and York Electric Cooperative, Inc., Appellants.

(417 S.E. (2d) 562)

Supreme Court

*Melvin B. McKeown, Jr.* of *Spratt, McKeown & Bradford,* York and *F. David Butler,* of *Public Service Com'n of South Carolina,* Columbia, *for appellants.*

*James M. Brailsford, III,* Columbia and *Emil W. Wald of Spencer & Spencer,* Rock Hill, *for respondent.*

Heard Feb. 3, 1992.

Decided April 13, 1992.

TOAL, Justice:

The issue presented in this appeal is whether the lower court erred in ordering the Public Service Commission ("Commis-

sion") to unassign an area which was previously assigned to York Electric Cooperative, Inc. ("York"), in order to allow the City of Rock Hill ("City") to provide service to the area. We find, under the facts presented in this case, the Commission could not be compelled by the lower court to unassign the area. Accordingly, we REVERSE and REMAND to Commission.

## FACTS

The facts are not disputed. In 1957, the City purchased a large tract of land outside its city limits. The property was developed by the City as an industrial park and municipal airport. In 1972, the Commission assigned a portion of this property to York, while some of the City's property was left unassigned. In 1984, the City sold a parcel of the property assigned to York to Elastomeric Products, Inc. ("EPI").

EPI requested electric service from the City. The City extended its existing lines to serve EPI and continues to provide electric service at this time. In extending service to EPI, the City relied upon the industrial consumer choice exception to the Territorial Assignment Act.[1] In 1986, this Court held in *Newberry v. Public Service Commission*, 287 S.C. 404, 339 S.E. (2d) 124 (1986), the industrial consumer choice exception was repealed by implication to the extent it applied to municipalities because under § 5-7-60, a municipality may provide electrical service outside its corporate limits only in areas unassigned by the Commission or with the consent of the assigned supplier. *Newberry*, at 407, 339 S.E. (2d) at 126. Thus, under *Newberry*, the City's service to the EPI premise is illegal and ultra vires. *Id.*

As a result, York brought an action before the Commission seeking an order enjoining the City from continuing to provide electric service to EPI. The City brought a separate action requesting the Commission "unassign" the EPI area so th City could continue to provide service. The actions were consolidated and heard by the Commission on June 25, 1986. In its order, the Commission denied the City's request to unas-

---

[1] This exception provides that an electrical utility may provide service to an industrial premise initially requiring service, in spite of the fact it is located in an area assigned to another utility, if the industry's connecting load for the initial full plant operation is greater than 750 kilowatts and it requests service from the utility. S.C. Code Ann. § 58-27-620(2) (1976). The EPI premise met these requirements.

sign the area and issued an injunction prohibiting the City from continuing to provide electrical service to EPI. The order was amended to allow the City to continue to provide service until a successor provider of electricity had extended its facilities to the EPI site.

The Commission's order was appealed to the Circuit Court. Before the appeal was heard, the City annexed the portion of the city-owned property which completely surrounds the EPI property. The EPI property, however, was not annexed pursuant to EPI's request. The Circuit Court remanded the case back to the Commission for further consideration in light of the annexation. The Commission reaffirmed its previous order. The City again appealed to the Circuit Court, which reversed the Commission's order finding that York could not serve the EPI plant without extending lines over city property. Accordingly, the lower court determined that the City"s right to consent to the use of its street and public property granted by the South Carolina Constitution would be undermined by the Commission's refusal to unassign the area so that the City could continue to provide service. The Court remanded the case to the Commission for an order withdrawing the EPI property from the territory assigned to York. This appeal followed.

## LAW/ANALYSIS

Article VIII, § 15 of the South Carolina Constitution provides:

> No law shall be passed by the General Assembly granting the right to construct and operate in a public street or on public property a street or other railway, telegraph, telephone or electric plant, or to erect water, sewer or gas works for public use, or to lay mains for any purpose, or to use the streets for any other such facility, without first obtaining the consent of the governing body of the municipality in control of the streets or public places proposed to be occupied for any such or like purpose.

We have interpreted this provision in several cases. In *City of Abbeville v. Aiken Elec. Co-op., Inc.*, 287 S.C. 361, 338 S.E. (2d) 831 (1985), we held that a municipality did not have the right to oust an existing electric supplier when the assigned area was subsequently annexed. However, we also deter-

mined that expansion by the use of any city street or public property by the supplier within the annexed area without the municipality's consent was prohibited. *Id.* In *Blue Ridge Electric v. City of Seneca*, 297 S.C. 283, 376 S.E. (2d) 514 (1989), the issue presented was whether a municipality could service new customers in an area assigned to another electrical supplier once the area was annexed into the city. We held that denying the municipalities the right to serve in the annexed areas would be tantamount to leaving the assigned supplier with an exclusive territorial right since the municipality would be faced with the choice of denying the property owners power or consenting to the assigned supplier's use of the streets and public ways for expansion of their service. As this would create an irreconcilable conflict between the Act 431 and municipality's rights under Article VIII § 15, we determined a municipality could not be enjoined from serving new customers within the annexed property.

In subsequent cases, this Court held the city's right to consent included the power to designate another supplier other than the municipal utility or the assigned supplier. Berkeley Electric Co-op. v. South Carolina Public Service Commission, 304 S.C. 15, 402 S.E. (2d) 674 (1991); City of Aiken v. Aiken Elec. Co-op., — S.C. —, 409 S.E. (2d) 403 (1991); South Carolina Electric & Gas v. Berkeley Electric Cooperative, Inc., — S.C. —, 411 S.E. (2d) 218 (1991). In these cases, we have implicitly acknowledged that without the ability to provide service or authorize another utility to provide service, the constitutional right to grant or withhold consent would be meaningless.

We affirm our previous holdings; the City's right to give or to deny consent to utilities within the corporate limits cannot be impinged upon by the Commission. However, that is not the posture of the case at bar. The area in question has not been annexed. The City has no legal right to serve the EPI premises. *City of Newberry, supra.* The City has attempted to gain legal rights to service the EPI premises by annexing the surrounding property. This action does not give the City the right to serve an area assigned to another utility. The City also sought to have the area unassigned by the Commission to legalize its service. We find that requiring the Commission to unassign the area would be tantamount to allowing the City to do indirectly what it could not do directly

under our decision in *City of Newberry*.

The City maintains that it is in the same dilemma as the municipality in *Blue Ridge* in that it must now either consent to the use of its streets of public property or deny EPI power. However, this case does not present the constitutional dilemma resolved in *Blue Ridge*. Here, the City does not dispute that it has the ability to annex the EPI property. EPI has agreed to the annexation and is contractually bound to consent to annexation at the City's option. The City has a choice not available in the dilemma discussed in *Blue Ridge*. Under our holding in *Blue Ridge*, the City can annex the property and continue to provide service. Further, the limitation of the City's choices was clearly of its own doing. At the time of annexation, the City chose to annex the surrounding area leaving the EPI property outside the city limits. The City was aware, under our holding in *City of Newberry, supra.*, that it could not legally serve this area without including it in the annexation.

We reluctantly overrule the solution fashioned by the learned trial court. Judge Bristow attempted to fashion an order which would avoid the potential constitutional impasse between the City's authority under the South Carolina Constitution to control its roads and streets and the statutory authority of the Commission to regulate territorial assignment. Under the particular facts of this case, however, we believe the constitutional impasse can be avoided because of the City's annexation agreement with EPI.

Therefore, we reverse the Circuit Court's order to the extent it orders the Commission to unassign the EPI site. We remand to the Public Service Commission and direct the Commission to modify its injunction to provide for a reasonable time for the City to either annex the area or to allow York or another utility selected by EPI under the industrial consumer choice exception to supply service with the City's consent.[2]

Reversed and remanded.

HARWELL, C.J., CHANDLER and FINNEY, JJ., and JOHN P. GARDNER, Acting Associate Justice, concur.

---

[2] We recognize the City may elect not to annex the EPI property or consent to the use of its property by another utility, thereby leaving EPI without electrical service. We decline to discuss any rights EPI may have against the City as those facts are not before the Court at this time.