478 S.E.2d 60

SANDY SPRINGS WATER CO., Big Creek Water Co., Starr–Iva Water Co., West Anderson Water Co., Hammond Water Co., Town of Belton, Town of Iva, Town of Pelzer, Town of Pendelton, Meansville–Riley Road Water Co., Broadway Water Co., Homeland Park Water and Sewer District, Town of Blackville, Highway 88 Water Co., Town of Hilda, Salley Water Works, City of Rock Hill, Bull Swamp Water Co., Gilbert–Summit, Jackson Public Works, City of Williamston, Town of St. George, Gaston Rural Water Co., Town of Ulmer, Town of Estill, and Burnettown Water System, Respondents,

v.

DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Appellant.

No. 24519.

Supreme Court of South Carolina.

Heard Sept. 17, 1996.
Decided Nov. 4, 1996.

Carlisle Roberts, Jr., and Walton J. McLeod, III, SCDHEC, Columbia; Richard D. Bybee, of Smith, Bundy, Bybee & Barnett, Charleston, for Appellant.

G. Dana Sinkler, Warren & Sinkler, Charleston, for Respondents.

MOORE, Justice:

Respondents are public water systems. They commenced this equal protection action challenging the validity of fees paid to appellant Department of Health and Environmental Control (DHEC) for fiscal year 1993–94. The trial judge granted respondents summary judgment. We reverse.

## FACTS

Pursuant to Congress's 1986 amendment of the Safe Drinking Water Act, the Environmental Protection Agency (EPA) promulgated new regulations that became effective in 1992 for monitoring drinking water. These new regulations required testing for many more contaminants than were previously monitored. With a funding shortage looming, DHEC considered relinquishing its "primacy" status for implementing the monitoring program thus allowing the EPA to take over monitoring. Returning implementation to the EPA, however, would not relieve water systems from having to perform the necessary tests and would place a tremendous burden on the many small public water systems in our State. Accordingly, DHEC opted to seek funding in order to implement a testing and monitoring program.

As part of the 1993–94 General Appropriations Act, 1993 S.C. Act No. 164, Part I, § 31.26, DHEC was authorized to collect fees according to the following fee schedule: [1]

| System Size # Service Connections | System Fee |
|---|---|
| 2–14 (serve fewer than 25 customers) | $ 150.00 |
| 2–14 (serve 25 or more customers) | 500.00 |
| 15–50 | 800.00 |
| 51–100 | 1,500.00 |
| 101–500 | 4,000.00 |
| 501–1,000 | 8,000.00 |
| 1,001–5,000 | 15,000.00 |
| 5,001–10,000 | 18,000.00 |
| 10,001–25,000 | 20,000.00 |
| 25,001–50,000 | 30,000.00 |
| 50,000–up | 40,000.00 |

The General Assembly also enacted S.C.Code Ann. § 44–55–120 (Supp.1995) which provides for the annual fee to be

---

1. This fee schedule was amended after the 1993–94 fiscal year.

established each year in the general appropriations act. Funds generated are deposited in the Safe Drinking Water Fund to be used solely for implementing the federal Safe Drinking Water Act. Further, under subsection (E) of § 44–55–120, a water system may, without seeking approval of the Public Service Commission, increase water rates to each service connection by an amount necessary to recover the cost of the fee. A service connection is defined as a "tap" which is the point at which water is delivered to a site.

Compliance with the Safe Drinking Water Act requires two types of testing: source testing and distribution testing. Source testing tests the purity of each water source used by the water system; distribution testing tests for contamination from within the distribution system itself, for instance, copper and lead from pipes.

Further, there are two types of public water systems in South Carolina. One is a source distribution system which distributes water directly from its natural source to the tap. The other is a master-metered distribution system which purchases water from a source distribution system and then delivers it to the tap.

After enactment of the 1993–94 fee schedule, DHEC unilaterally reduced the fee for master-metered systems by 30% to adjust for the reduced amount of testing required for a master-metered system because it purchases water that has already been source tested. The fee for small source systems was also reduced by 30% because of lesser monitoring requirements and their inability to recoup the fee from customers.

Despite the fee reduction, respondents, who are all either master-metered or small source systems, challenged the fee schedule as a violation of equal protection because the classification of fees was based on the number of taps. The trial judge found the fees in question constituted a "tax"[2] and the classification of taxpayers according to the number of taps resulted in a gross disparity that violated equal protection.

---

2. This ruling is unappealed and is therefore the law of the case. *Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 473, 427 S.E.2d 646 (1993).

## DISCUSSION

In challenging a classification on equal protection grounds, the party alleging a violation must show that similarly situated persons received disparate treatment. *Grant v. South Carolina Coastal Council,* 319 S.C. 348, 461 S.E.2d 388 (1995). The burden is upon the taxpayer to prove the unconstitutionality of a tax classification beyond a reasonable doubt and he must negate every conceivable basis that might support it. *Thomson Newspapers, Inc. v. City of Florence,* 287 S.C. 305, 338 S.E.2d 324 (1985).

In this case, the trial judge found the classification of water systems according to number of taps resulted in "gross disparity" because the number of taps does not reflect the number of people actually drinking the water supplied by a given water system. The trial judge concluded since the purpose of the Safe Drinking Water Act is to provide safe drinking water for all citizens, all the people drinking the water should pay equally.

First, we note it is not the people drinking the water who are the taxpayers but the water systems upon whom these fees are imposed. The record in this case contains no evidence similarly situated water systems paid unconstitutionally disparate fees. The trial judge's reliance on *Southern Bell Tel. Co. v. City of Spartanburg,* 285 S.C. 495, 331 S.E.2d 333 (1985), is misplaced. In that case, we found an equal protection violation where one corporate taxpayer paid a much greater percentage of its gross receipts in taxes. There is no showing in the record that some water systems paid a disparate portion of their revenue under the fee schedule at issue.

Further, the trial judge found the classification resulted in disparate treatment because the number of taps does not reflect the amount of testing and monitoring required for a given water system. Where all taxpayers receive some benefit, however, the equal protection clause does not require mathematical symmetry between benefits received and payment for those benefits. *Davis v. Greenville County,* 313 S.C. 459, 443 S.E.2d 383 (1994). The record indicates the Safe Drinking Water Fund, in which all fees are deposited, funds the Safe Drinking Water Program. This program includes not only testing and monitoring, but also emergency response,

technical assistance, permitting requests, and general administration of the regulations. These services benefit *all* water systems. Further, although master-metered systems need only distribution testing, they also benefit from source testing since the water they purchase must first be source-tested.

Finally, respondents failed to negate every conceivable basis to support the classification by number of taps. Contrary to respondents' assertions, administrative concerns may provide a rational basis for a legislative classification. *Skyscraper Corp. v. County of Newberry,* 323 S.C. 412, 475 S.E.2d 764 (1996).

In conclusion, respondents failed to show beyond a reasonable doubt that the classification by number of taps violated equal protection. Accordingly, the order granting summary judgment is

**REVERSED.**

TOAL, Acting C.J., WALLER and BURNETT, JJ., and DONALD W. BEATTY, Acting Associate Justice, concur.