593 S.E.2d 154

**WILLIAMSBURG RURAL WATER AND SEWER
COMPANY, INC., Appellant,**

v.

**WILLIAMSBURG COUNTY WATER AND SEWER AUTHOR-
ITY, a Body Politic, County of Williamsburg, A Body Poli-
tic, and Town of Kingstree, a Body Politic, Respondents.**

No. 3707.

Court of Appeals of South Carolina.

Heard June 11, 2003.

Decided Dec. 8, 2003.

Rehearing Denied March 4, 2004.

252

Larry G. Reddeck, of Lake City; for Appellant.

Ernest J. Jarrett, W.E. Jenkinson, III, and Jennifer R. Kellahan, all of Kingstree; for Respondents.

HEARN, C.J.:

The central issue in this case is whether a county's constructive approval of a water and sewer service proposal submitted by a non-profit corporation under former S.C.Code Ann. § 33-35-90 grants the non-profit corporation exclusive service rights such that the county may not give franchise rights to competing providers within the same service areas designated in the proposal. Williamsburg Rural Water and Sewer Company, Inc. (Williamsburg Water) commenced this action against Williamsburg County, Williamsburg County Water and Sewer Authority, and the Town of Kingstree (collectively, the County)[1] seeking: (1) a determination that Williamsburg Water possessed an exclusive right to provide water and sewer service within designated unincorporated areas in Williamsburg County, (2) damages in tort based on the County's interference with that right, and (3) injunctive relief. The circuit court granted summary judgment to the County, finding that Williamsburg Water did not possess an exclusive

---

1. Williamsburg Water named the Town of Hemingway and Barrineau Water Company, Inc., as defendants in the case, but these defendants were later dismissed as parties.

service right and that Williamsburg Water's cause of action in tort was barred by the South Carolina Tort Claims Act and the statute of limitations. Williamsburg Water appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

The relevant facts of this case are largely undisputed and are gathered from a timeline of events to which the parties stipulated. On January 16, 1995, W.N. Kellahan, an organizer of Williamsburg Water, sent a letter to Elwood Gerald, the County's director of rural and community development, notifying the County of Williamsburg Water's intention to provide service to certain unincorporated areas of Williamsburg County pursuant to S.C.Code Ann. § 33–35–90 (1990).[2] Section 33–35–90 sets forth the statutory mechanism for a non-profit corporation to provide water and sewer services within the geographical areas designated in its articles of incorporation, provided the corporation notifies the county of the nature of the services to be provided and receives the county's consent.

In March and again in April of 1995, Kellahan appeared before the Williamsburg County Council on behalf of Williamsburg Water to reiterate Williamsburg Water's intent to provide services to the designated areas. Kellahan sent a copy of Williamsburg Water's master plan to the council and to Gerald. In May of 1995, Williamsburg Water filed its articles of incorporation with the Secretary of State. Shortly thereafter, Williamsburg Water began applying for loans and federal grants to fund its operation.

During this same time period, the county council began considering enacting an ordinance that would allow the County to expand its own water and sewer services into the same unincorporated areas that Williamsburg Water intended to service. The proposed ordinance allowed the County to grant franchises to organizations that submitted applications to the County seeking permission to provide service within these same areas.

---

2. In October of 2000, section 33–35–90 was repealed and replaced with section 33–36–270.

The first of three public readings of the proposed franchise ordinance was held on March 6, 1995. On August 7 of that year, the ordinance was adopted. In May of 1998, the County applied for federal funding to construct its water system. On November 3, 1998, the County solicited bids for water and sewer services to the Industrial Park area, which is located within the service area designated in Williamsburg Water's proposal. The County awarded the bid to Tom Brigman Contractor's, Inc., of Newberry, on November 9, 1998.

In response, Williamsburg Water commenced this action against the County on December 4, 1998, claiming that Williamsburg Water possessed an exclusive right to provide services to the unincorporated areas specified in its proposal, including the area where the Industrial Park was located. In essence, Williamsburg Water claimed that its proposal was approved by the County by virtue of the County's failure to notify Williamsburg Water to the contrary in accordance with section 33–35–90. Williamsburg Water further claimed the County intentionally interfered with and/or threatened to interfere with Williamsburg Water's ability to obtain federal funding and to provide service within the designated areas. The complaint alleged that as a result of the County's grossly negligent actions, Williamsburg Water suffered injury and damages. Finally, Williamsburg Water sought a declaration that it was exempt from the County's franchise ordinance and that it possessed an exclusive right to service the unincorporated areas designated in its proposal.

Williamsburg Water and the County filed cross motions for summary judgment. The circuit court granted summary judgment to the County on Williamsburg Water's first cause of action, ruling that Williamsburg Water had the right, but not the exclusive right, to provide water and sewer service to the designated areas. The circuit court also granted summary judgment to the County on Williamsburg Water's action in tort, finding the County was immune from liability under the South Carolina Tort Claims Act and that the statute of limitations had run. However, the circuit court found there was a genuine issue of material fact as to whether Williamsburg Water was exempt from the County's franchise ordinance. This appeal follows.

## STANDARD OF REVIEW

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Id.; SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 497, 392 S.E.2d 789, 792 (1990). "In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Worsley Cos. v. Town of Mount Pleasant,* 339 S.C. 51, 55, 528 S.E.2d 657, 659 (2000).

## *LAW/ANALYSIS*

### I. Exclusive Service Rights

The circuit court found that the notices contained in Williamsburg Water's proposal dated January 16, 1995, were both proper and adequate to comply with section 33–35–90. Moreover, the circuit court held Williamsburg Water possessed the right, but not the exclusive right, to provide service within the disputed area. The County did not appeal either of these findings; therefore, it is the law of this case that Williamsburg Water possesses a right to provide water and sewer services in Williamsburg County. *See Bakala v. Bakala,* 352 S.C. 612, 576 S.E.2d 156 (2003); *Charleston Lumber Co. v. Miller Housing Corp.,* 338 S.C. 171, 525 S.E.2d 869 (2000) (stating an unappealed ruling is the law of the case). The question before this court is whether that right is an exclusive service right, such that the County is prohibited from awarding franchises within the areas identified in Williamsburg Water's proposal.

The circuit court's order does not indicate the basis for its finding that Williamsburg Water possesses a right to provide service in the county. We presume the circuit court found this right to be the product of the County's failure to comply with the mandatory notice provisions of section 33–35–90, for there is no other explanation in the order for the creation of this right. It is the law of this case that Williamsburg Water possesses a right of some degree; thus, determining the source of that right is not necessary to its existence. However, we believe it is necessary for a complete understanding of the controversy in this case to briefly set forth our view regarding the County's failure to comply with section 33–35–90, which must be the foundation for the circuit court's ruling.

Section 33–35–90 (1990) stated in relevant part:

[P]rior to providing any of the services authorized in this section, nonprofit corporations or groups intending to organize such corporations shall first notify the governing body, of the county or municipality in which the services are to be provided, of their intentions and the nature of such services. *The governing body shall, from the date of such notification, have a period of ninety days in which to approve the request to provide such services or inform the persons requesting permission to provide such services that the governing body intends to provide for such matters as a public function of government. Any such notification of intent by the governing body shall include a detailed description of the area to be served, the services to be provided and the time schedule under which such services will be available from the county or municipality.*

(Emphasis added).

"The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998). "Unless there is something in a statute requiring a different interpretation, the words used in the statute must be given their ordinary meaning." *Mullinax v. J.M. Brown Amusement Co.,* 326 S.C. 453, 458, 485 S.E.2d 103, 106 (Ct.App.1997). "The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Hitachi Data Sys.*

*Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998).

■ Section 33–35–90 unambiguously required the County to respond to Williamsburg Water's proposal within ninety days of its receipt. The statute further required the County to inform Williamsburg Water of its intention to provide such services and to give a detailed description of any area it wished to serve, as well as a time schedule for the availability of such services. Although the first reading of the proposed ordinance occurred within ninety days of Williamsburg Water's application, there is no evidence the reading of the ordinance notified Williamsburg Water that the County had rejected its proposal or that it described with detail the area it wished to service, the nature of services to be provided, and the time schedule for the availability of such services. Section 33–35–90 mandates that "any" such notification by the County "shall" include such information. It is irrelevant that representatives of Williamsburg Water attended the reading of the proposed ordinance because the reading did not satisfy the requirements of the statute. The County, therefore, failed to comply with section 33–35–90.

Unlike current section 33–36–270,[3] the former statute does not specifically state that a governing body's failure to respond to a non-profit corporation's proposal serves as an acceptance of the corporation's proposal. However, we believe the use of affirmative language stating that the County "*shall . . . have a period of ninety days*" in which to respond imposes an obligation upon the County to take action in accordance with the statute. *See Horry County v. City of Myrtle Beach*, 288 S.C. 412, 419, 343 S.E.2d 36, 39 (Ct.App.1986) (stating the words "shall" and "must" are generally regarded as making a provision mandatory). Considering its overall purpose and the mandatory terms chosen by the legislature, we believe the

---

3. S.C.Code Ann. § 33–36–270 (2000) includes the following language: "Failure to notify the corporation within ninety days of the governing body's approval or intent to serve is considered approval."

only logical construction of section 33–35–90 is that the County's failure to respond within the ninety-day time limit constitutes approval of Williamsburg Water's proposal.[4]

We turn now to address the extent of the service rights acquired by Williamsburg Water as a result of the County's implicit approval of the proposal. Williamsburg Water argues its right to provide water and sewer services is exclusive; therefore, the County was prohibited from awarding franchises within the proposed service area. The County disagrees, contending that Section 15 of Article VIII of the South Carolina Constitution safeguards the County's right to choose whomever it desires to provide such services to its citizens.

Section 15 of Article VIII states in pertinent part:

*[N]or shall any law be passed by the General Assembly granting the right to construct and operate in a public street or on public property a street or other railway, or to erect waterworks for public use, or to lay water or sewer mains for any purpose, or to use the streets for any facility other than telephone, telegraph, gas, and electric, without first obtaining the consent of the governing body of the county . . . .*

(Emphasis added).

Section 15 of Article VIII of the South Carolina Constitution prohibits the legislature from passing a law which grants the right to lay water or sewer mains without first obtaining a county's consent. *See City of Aiken v. Aiken Elec. Co-op., Inc.*, 305 S.C. 466, 468, 409 S.E.2d 403, 404 (1991). However, section 15 conveys only a veto power; it is not a franchising mechanism. *See City of Abbeville v. Aiken Elec. Co-op., Inc.*, 287 S.C. 361, 368, 338 S.E.2d 831, 835 (1985) ("The consent provision of § 15 is not an *affirmative* grant of franchise power, but is a *restriction* on legislative authority.") (Emphasis in original). Therefore, prior to receiving the County's consent, Williamsburg Water was prohibited from entering into any area of the county because Section 15 of Article VIII acted as a shield barring any such intrusion without the County's approval. In this case, the County's

---

4. Because only the extent of the service right is in issue, and not the existence thereof, we need not address Williamsburg Water's argument that section 33–36–270 applies retroactively to these facts.

constructive consent simply removed this constitutional shield; it did not, however, convert a previously non-existent right into a right that is exclusive against all others, including the County. Nothing in section 33–35–90 or case law of this state suggests such an extensive interpretation.

The cases in South Carolina that have addressed conflicts between rural service providers and governmental bodies give little guidance under the facts of this case. Both parties directed this court's attention to the line of cases involving annexation, including *City of Aiken* and *City of Abbeville,* as well as *City of Rock Hill v. Pub. Serv. Comm'n of S.C.,* 308 S.C. 175, 417 S.E.2d 562 (1992), *South Carolina Electric & Gas Co. v. Berkeley Elec. Co-op., Inc.,* 306 S.C. 228, 411 S.E.2d 218 (1991), *Berkeley Elec. Co-op., Inc. v. S.C. Pub. Serv. Comm'n,* 304 S.C. 15, 402 S.E.2d 674 (1991), and *Blue Ridge Elec. Co-op., Inc. v. City of Seneca,* 297 S.C. 283, 376 S.E.2d 514 (1989).

In this line of cases, the common facts involved a municipality's annexation of land which was within an area that the Public Service Commission had assigned to a rural service provider. An irreconcilable conflict developed between the alleged right of the rural service provider to expand its services within its assigned area and the municipality's right to determine who would provide services within the newly incorporated area. *Cf., City of Rock Hill,* 308 S.C. at 178, 417 S.E.2d at 564. If the rural service provider possessed an exclusive right to service the area, the municipality could not offer the services. However, the municipality could prevent the rural service provider from using the municipality's streets to extend its services by refusing to give consent as provided for in Section 15 of Article VIII. The result of this situation would be that the citizens within the disputed area would effectively be denied service because the rights possessed by each would prevent the other from servicing the area. *Cf., id.; Blue Ridge,* 297 S.C. at 289, 376 S.E.2d at 517–18. The supreme court refused to compel the municipalities to give their consent to the assigned provider because limiting a municipality's right to choose fatally undermines the concept of consent. *Cf., City of Rock Hill,* 308 S.C. at 178, 417 S.E.2d at 564; *Blue Ridge,* 297 S.C. at 289, 376 S.E.2d at 517–18. Instead, the supreme court found the service rights possessed

by the provider were not exclusive and that the right of consent embodied the right of the municipality to designate a supplier of the municipality's choosing. *Cf., Berkeley Elec. Coop.*, 304 S.C. at 19–20, 402 S.E.2d at 677.

We find the annexation cases inapposite because in those cases, the source of the provider's service rights was an assignment by the Public Service Commission whereas Williamsburg Water acquired its service right as a result of the County's consent, which resulted from the County's failure to comply with section 33–35–90. Thus, unlike the annexation cases, the governmental body invading Williamsburg Water's proposed service area is the same body from which consent was obtained for that service. Moreover, in the annexation cases, the service providers were allowed to continue servicing areas where they maintained existing service. In this case, Williamsburg Water has no existing service facilities anywhere within the disputed region. There are two fundamental elements underlying the annexation cases which distinguish them from this case: (1) the governing body never consented to the provider, and (2) the provider had existing service in some portion of the disputed area. Because neither of these elements is present here, the annexation cases offer little guidance in resolving a dispute of this posture.

By failing to comply with section 33–35–90, the County consented to Williamsburg Water's service proposal. Therefore, unlike in the annexation cases, this factor is decided in favor of Williamsburg Water. However, nothing in section 33–35–90 suggests that the receipt of constructive consent is tantamount to obtaining a right so exclusive as to operate against the very entity from which the consent was initially required. Williamsburg Water's service rights are not superior to the County's own right to decide who will provide water and sewer services to its citizens, especially considering that Williamsburg Water has no existing service facilities in place as seen in the annexation cases.[5]

---

5. We recognize that the lack of existing facilities is likely the result of Williamsburg Water's inability to obtain funding due to the circumstances surrounding the County's award of franchises for the same areas which Williamsburg Water desired to service. However, we cannot ignore the absence of facilities in light of its significance in the annexation cases.

The difficulty of this case lies in giving effect to the rights acquired by Williamsburg Water as a result of the County's failure to comply with section 33-35-90. If this statute is to have any meaning, there must be some enforceable quality belonging to those rights; otherwise, a party obtaining approval under this statute receives, in effect, nothing at all. Complicating the matter is the fact that during the pendency of this appeal, the County awarded numerous franchises affecting the disputed area, and those facilities are presently under development for the benefit of the people of Williamsburg County. Thus, in this case, valid but competing interests are diametrically opposed. An unfortunate result of our ruling today is that Williamsburg Water likely possesses a right which has little commercial value in light of the County's intrusion into the designated service area. Nevertheless, in the absence of case law on point, and without specific language in section 33-35-90 compelling the grant of exclusive rights, we hold that Williamsburg Water does not possess an exclusive service right within the described service area; rather, as the circuit court found, it possesses a non-exclusive service right.

## II. Applicability of the Franchise Ordinance to Williamsburg Water

■ Williamsburg Water argues the trial court erred in failing to find as a matter of law that it was exempt from the County's franchise ordinance because it was a bona fide water/sewer system as defined by the ordinance. This issue is not directly appealable.

The supreme court's recent decision in *Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 580 S.E.2d 440 (2003), resolves the issue of the appealability of the denial of a motion for summary judgment. While in the past this court has, in its discretion, heard an appeal from the denial of summary judgment where there was another appealable issue before the court, that is no longer the rule in South Carolina. *Olson* expressly holds "the denial of a motion for summary judgment is not appealable, even after final judgment." In so holding, the supreme court expressly overruled cases that are inconsistent with this rule. *Id.*

In this case, the trial court found there was a genuine issue of material fact as to whether Williamsburg Water was a bona fide water/sewer system thereby exempting it from the County's franchise ordinance. On remand, the trial court must first decide whether the ordinance is capable of being applied to Williamsburg Water in consideration of the timing and manner of its enactment.[6] Should the trial court determine the ordinance is capable of being applied to Williamsburg Water, it must then determine whether Williamsburg Water is exempt from the ordinance under either of the prescribed circumstances stated in the ordinance. *See* Section II, Williamsburg County Ordinance No.1995–3 ("All areas of the county not now served by an existing bona fide water/sewer system or located within a County Council approved water/sewer service area are hereby designated as within the County water/sewer system service area."). Pursuant to the express terms of the ordinance, all areas that qualify under either of the exemptions stated above are not within the County's water/sewer system service area.

 The fact that this issue is not directly appealable does not preclude the parties from again moving for summary judgment on this issue on the same or other grounds not previously considered by the trial court. The denial of summary judgment does not finally determine the merits of the case, and issues raised in a motion may be raised again in a motion to reconsider summary judgment or in a motion for directed verdict. *Brown v. Pearson,* 326 S.C. 409, 416–17, 483 S.E.2d 477, 481 (Ct.App.1997). The parties may make a later motion for summary judgment based on matters not involved in the decision on the first motion. *Croswell Enters., Inc. v. Arnold,* 309 S.C. 276, 279, 422 S.E.2d 157, 159 (Ct.App.1992).

## III. The South Carolina Tort Claims Act

### A. The County's immunity from liability

Williamsburg Water maintains the circuit court erred in granting summary judgment to the County on Williamsburg Water's tort cause of action because there was a genuine issue

---

**6.** During oral argument, counsel for Williamsburg Water conceded that it is subject to certain aspects of the ordinance.

of material fact as to whether the County acted in a grossly negligent manner. We disagree.

Williamsburg Water alleged that the County's gross negligence in undertaking to provide water and sewer service to areas designated in Williamsburg Water's approved proposal caused Williamsburg Water damages as a result of its inability to obtain federal funding and, likewise, to provide service within the exclusive service area. The circuit court found the County was immune from liability under the South Carolina Tort Claims Act.

The South Carolina Tort Claims Act declares that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions within the Act. S.C.Code Ann. § 15–78–40 (Supp.2002). Section 15–78–60 sets forth exceptions to this waiver of sovereign immunity, and the exceptions restore certain limitations on the liability of a governmental entity. S.C.Code Ann. § 15–78–60 (Supp.2002). Section 15–78–60(12) provides that a government entity is not liable for loss resulting from:

> licensing powers or functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority *except when the power or function is exercised in a grossly negligent manner* [.]

(Emphasis added).

"Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Clyburn v. Sumter County Sch. Dist. No. 17,* 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994). "It is the failure to exercise even the slightest care." *Faile v. South Carolina Dep't. of Juvenile Justice,* 350 S.C. 315, 331–32, 566 S.E.2d 536, 544 (2002). "Gross negligence ... means the absence of care that is necessary under the circumstances." *Etheredge v. Richland Sch. Dist. One,* 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000). "Additionally, while gross negligence ordinarily is a mixed question of law and fact, when the evidence supports but one

reasonable inference, the question becomes a matter of law for the court." *Id.*

■■■ Although the County failed to comply with section 33–35–90 regarding notice to Williamsburg Water, there is no evidence to support Williamsburg Water's allegation that the County's conduct rose to the level of gross negligence. The record contains no indication that the County intentionally sought to interfere with Williamsburg Water's ability to service the area. Rather, the evidence suggests the County proceeded under the mistaken impression that it satisfied the notice provisions of section 33–35–90 when it gave public readings of the proposed ordinance. Accordingly, contrary to Williamsburg Water's contention, the evidence indicates the County was unaware that Williamsburg Water had acquired any service rights within the disputed area. Therefore, we believe the only reasonable inference from the evidence is that any intrusion by the County upon Williamsburg Water's service rights was unintentional and not the product of gross negligence. The Tort Claims Act bars recovery from government entities under such circumstances.

## B. The statute of limitations

Williamsburg Water argues the trial court erred in determining its tort claims against the County were barred by the statute of limitations. We need not decide this issue in light of our holding that the County was entitled to summary judgment based on the lack of evidence supporting Williamsburg Water's claim of gross negligence.

## CONCLUSION

We hold today that section 33–35–90 does not convey exclusive service rights to Williamsburg Water on the facts of this case. Nothing in the statutory language suggests such an extensive interpretation, and a contrary finding would be inconsistent with our view of the veto power granted to counties and municipalities by virtue of Section 15 of Article VIII of the South Carolina Constitution. By failing to act, the County consented to Williamsburg Water's proposal, but that consent does not transform a non-existent service right into an exclusive service right.

We also affirm the circuit court's grant of summary judgment in favor of the County with respect to Williamsburg Water's causes of action in tort, holding that the County is immune from liability under the South Carolina Tort Claims Act. The denial of summary judgment as to whether the franchise ordinance applies to Williamsburg Water is not appealable, and that issue is remanded to the circuit court for further proceedings consistent with this opinion.

**AFFIRMED.**

CURETON, HUFF, HOWARD, BEATTY, JJ., and JEFFERSON, A.J., concur.

ANDERSON, J. (Concurring in Result ONLY in a Separate Opinion):

I concur in result **ONLY.** I disagree with the reasoning and analysis of the majority.

Williamsburg Rural Water and Sewer Company, Inc. (Williamsburg Water) commenced this action against Williamsburg County, Williamsburg County Water and Sewer Authority, and the Town of Kingstree (collectively, the County),[1] seeking: (1) a determination of Williamsburg Water's right to provide water and sewer service within designated unincorporated areas in Williamsburg County; (2) damages in tort based on the County's actions; and (3) injunctive relief. The circuit court granted summary judgment to the County finding that Williamsburg Water did not have the exclusive right to provide service to the designated areas, and that Williamsburg Water's cause of action in tort was barred by the South Carolina Tort Claims Act and the statute of limitations. Williamsburg Water appeals.

## FACTS/PROCEDURAL BACKGROUND

The facts of the case are largely undisputed and are gathered from a timeline of events to which the parties stipulated. On January 16, 1995, W.N. Kellahan, an organizer of Williamsburg Water, sent a letter to Elwood Gerald, the County's

---

1. Williamsburg Water named the Town of Hemingway and Barrineau Water Company, Inc. as defendants in the case, but these defendants were later dismissed as parties.

director of rural and community development, notifying the County of Williamsburg Water's intention to provide service to certain unincorporated areas of Williamsburg County pursuant to S.C.Code Ann. § 33–35–90 (1990).[2] Section 33–35–90 articulates a statutory mechanism for a non-profit corporation to furnish water and sewer services within the geographical areas designated in its articles of incorporation, subject to certain conditions relating to notice and consent.

In March and again in April of 1995, Kellahan appeared before the Williamsburg County Council on behalf of Williamsburg Water to reiterate Williamsburg Water's intent to provide services to the designated areas. Kellahan sent a copy of Williamsburg Water's master plan to the council and to Gerald. In May of 1995, Williamsburg Water filed its articles of incorporation with the Secretary of State. Shortly thereafter, Williamsburg Water initiated applications for loans and federal grants to fund its operation.

During this same time period, the county council began considering enacting an ordinance that would allow the County to expand its own water and sewer system to the same unincorporated areas that Williamsburg Water intended to service. The proposed ordinance allowed the County to grant franchises to organizations that submitted applications to the County seeking permission to provide service to unincorporated areas within the County.

On August 7, 1995, the County adopted the proposed franchise ordinance. In May of 1998, the County applied for federal funding to construct a rural water system. On November 3, 1998, the County opened bids for water and sewer services to the Industrial Park located within the same service area designated in Williamsburg Water's articles of incorporation. The County awarded the bid to Tom Brigman Contractors, Inc., of Newberry, South Carolina, on November 9, 1998.

In response, Williamsburg Water filed an action against the County on December 4, 1998, claiming that Williamsburg Water had the exclusive right to provide services to the specified unincorporated areas of Williamsburg County, in-

---

2. In October of 2000, § 33–35–90 was repealed and replaced with § 33–36–270.

cluding the area where the Industrial Park was located. Williamsburg Water further averred the County intentionally interfered with and/or threatened to interfere with Williamsburg Water's ability to obtain federal funding and to provide service within the designated areas. The complaint alleged that as a result of the County's grossly negligent actions, Williamsburg Water suffered injury and damages. Finally, Williamsburg Water sought a declaration that it was a bona fide water system and, therefore, exempt from the County's franchise ordinance and that it had an exclusive right to service the unincorporated areas of the County.

Williamsburg Water and the County filed cross motions for summary judgment. The circuit court granted summary judgment to the County on Williamsburg Water's first cause of action, ruling that Williamsburg Water did not have the exclusive right to provide water and sewer service to the designated areas. The court granted summary judgment to the County on Williamsburg Water's tort cause of action, finding the County was immune from liability under the South Carolina Tort Claims Act and that the statute of limitations had run. However, the circuit court found there was a genuine issue of material fact as to whether Williamsburg Water was a bona fide water system exempt from the County's franchise ordinance.

## STANDARD OF REVIEW

"Summary judgment is appropriate only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 130, 558 S.E.2d 271, 273 (Ct.App.2001) (quoting Rule 56(c), SCRCP); *see also Sauner v. Public Serv. Auth.*, 354 S.C. 397, 581 S.E.2d 161 (2003) (summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Lanham v. Blue Cross & Blue Shield*, 349 S.C. 356, 563 S.E.2d 331 (2002); *Hall v. Fedor*, 349 S.C. 169, 561 S.E.2d 654 (Ct.App.2002). In

determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Cunningham v. Helping Hands, Inc.*, 352 S.C. 485, 575 S.E.2d 549 (2003); *Glasscock, Inc. v. United States Fid. & Guar. Co.*, 348 S.C. 76, 557 S.E.2d 689 (Ct.App.2001).

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing, and Regulation*, 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991); *Peterson v. West American Ins. Co.*, 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990); *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 556 S.E.2d 732 (Ct. App.2001).

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). On appeal from an order granting summary judgment, this court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the nonmoving party below. *Osborne v. Adams*, 346 S.C. 4, 550 S.E.2d 319 (2001); *see also Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999) (all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party). The judgment may be affirmed

only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Estate of Cantrell v. Green,* 302 S.C. 557, 397 S.E.2d 777 (Ct.App.1990).

## *LAW/ANALYSIS*

### I. MANDATED NOTICE UNDER § 33–35–90

South Carolina Code § 33–35–90 (1990) states in pertinent part:

[P]rior to providing any of the services authorized in this section, nonprofit corporations or groups intending to organize such corporations shall first notify the governing body, of the county or municipality in which the services are to be provided, of their intentions and the nature of such services. The governing body shall, from the date of such notification, have a period of ninety days in which to approve the request to provide such services or inform the persons requesting permission to provide such services that the governing body intends to provide for such matters as a public function of government. Any such notification of intent by the governing body shall include a detailed description of the area to be served, the services to be provided and the time schedule under which such services will be available from the county or municipality.

S.C.Code Ann. § 33–35–90 (1990). In his order, the circuit judge found:

[Williamsburg Water] specifically gave notice, as required by § 33–35–90 of the S.C.Code Ann., 1976, as amended, that it desired to provide water service in its designated area to the Williamsburg County Council on January 16, 1995, and again on March 6, 1995, of its intention to provide such service.

. . . .

. . . I further find that the notices to Williamsburg County provided on January 16, 1995, and again on March 6, 1995, were both proper and adequate to comply with Section 33–35–90 of the Code of Laws of South Carolina, 1976, as amended.

The County did not appeal the finding by the circuit judge that the notice given by Williamsburg Water under § 33–35–90 was adequate and proper. An unappealed ruling is the law of the case. *Bakala v. Bakala,* 352 S.C. 612, 576 S.E.2d 156 (2003); *Charleston Lumber Co. v. Miller Housing Corp.,* 338 S.C. 171, 525 S.E.2d 869 (2000); *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997); *Sandy Springs Water Co. v. Department of Health and Envtl. Control,* 324 S.C. 177, 478 S.E.2d 60 (1996); *Resolution Trust Corp. v. Eagle Lake & Golf Condos,* 310 S.C. 473, 427 S.E.2d 646 (1993); *Larimore v. Carolina Power & Light,* 340 S.C. 438, 531 S.E.2d 535 (Ct.App.2000); *see also Brading v. County of Georgetown,* 327 S.C. 107, 490 S.E.2d 4 (1997) (clarifying that where decision is based on more than one ground, appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case); *In re Morrison,* 321 S.C. 370, 468 S.E.2d 651 (1996) (recognizing court's ruling is the law of the case where it is not contested on appeal); *Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970) (stating an unchallenged ruling, "right or wrong, is the law of the case and requires affirmance"); *Priester v. Brabham,* 230 S.C. 201, 95 S.E.2d 167 (1956) (holding that, because there was no exception to the ruling of the court below, that ruling, right or wrong, was the law of the case); *Unisun Ins. v. Hawkins,* 342 S.C. 537, 537 S.E.2d 559 (Ct.App.2000) (noting an unappealed ruling is the law of the case which the appellate court must assume was correct); *Hall v. Clarendon Outdoor Adver., Inc.,* 311 S.C. 185, 428 S.E.2d 1 (Ct.App.1993) (emphasizing that failure to argue against basis for trial court's ruling renders it the law of the case). Concomitantly, the ruling by the circuit judge is the law of the case.

## II. EXCLUSIVITY

Williamsburg Water argues the trial court erred in failing to find that it had the exclusive right to provide service within the areas listed in its articles of incorporation. I disagree.

There is nothing in § 33–35–90 that gives exclusivity to the "nonprofit corporations or groups intending to organize such corporations." *See* S.C.Code Ann. § 33–35–90 (1990). Moreover, § 33–35–90 contains language which indicates that its

service would NOT be exclusive. Section 33–35–90 states in relevant part:

[S]uch corporations are specifically authorized to borrow funds and contract with municipalities, counties and other political subdivisions for the provision of such services in accordance with this chapter and the Rural Development Act of 1972, and counties, municipalities and other political subdivisions are authorized to so contract with such non-profit corporations.

Section 33–35–90 does not confer upon Williamsburg Water any specific right, nor does it impose upon the County a duty owed Williamsburg Water in this case.

Furthermore, section 33–35–170 limits the application of § 33–35–90. *See* S.C.Code Ann. § 33–35–170 (1990).[3] Pursuant to § 33–35–170, "[t]he powers and authorities conferred by this chapter shall be in addition to and supplemental to any other general, special or local law. This chapter is complete in itself and shall not repeal by implication or otherwise any other general, special or local law." This section does not grant any special powers by the provisions of this chapter or § 33–35–90. It makes these provisions supplemental to and does not repeal any other general, special or local law.

The provisions of the South Carolina Constitution place restrictions on what the General Assembly may do through statutes. *See Knight v. Salisbury,* 262 S.C. 565, 206 S.E.2d 875 (1974). Article VIII, Section 15 of the South Carolina Constitution provides:

No law shall be passed by the General Assembly granting the right to construct and operate in a public street or on public property a street or other railway, telegraph, telephone or electric plant, or to erect water, sewer or gas works for public use, or to lay mains for any purpose, or to use the streets for any other such facility, without first obtaining the consent of the governing body of the municipality in control of the streets or public places proposed to be occupied for any such or like purpose; *nor shall any law be passed by the General Assembly granting the right to* construct and operate in a public street or on public property a street or other railway, or to *erect waterworks*

---

3. In October of 2000, § 33–35–170 was repealed.

*for public use, or to lay water or sewer mains for any purpose,* or to use the streets for any facility other than telephone, telegraph, gas and electric, *without first obtaining the consent of the governing body of the county* or the consolidated political subdivision in control of the streets or public places proposed to be occupied for any such or like purpose.

S.C. Const. art. VIII, § 15 (emphasis added). Article VIII, Section 16 reads: "Any incorporated municipality may, upon a majority vote of the electors of such political subdivision who shall vote on the question, acquire by initial construction or purchase and may operate gas, water, sewer, electric, transportation or other public utility systems and plants." S.C. Const. art. VIII, § 16.

Article VIII, § 15 prohibits the legislature from passing any law granting a right to construct or operate a water or sewer system without the consent of the county's governing body. *City of Aiken v. Aiken Elec. Coop., Inc.,* 305 S.C. 466, 409 S.E.2d 403 (1991). No statute passed by the legislature can limit or undermine the constitutional requirement of the county's consent. *See Blue Ridge Elec. Coop., Inc. v. City of Seneca,* 297 S.C. 283, 376 S.E.2d 514 (1989).

Article VIII, section 15 requires consent of the county at the time a water or sewer system is first constructed or when it is expanded. *See City of Cayce v. AT & T Communications,* 326 S.C. 237, 486 S.E.2d 92 (1997); *City of Abbeville v. Aiken Elec. Coop., Inc.,* 287 S.C. 361, 338 S.E.2d 831 (1985). The consent requirement of Article VIII, section 15 permits counties to impose conditions on the grant of their consent to allow utilities to build and operate water and electric systems. *City of Cayce,* 326 S.C. at 241–42, 486 S.E.2d at 94. Counties have the right to grant public utility franchises and to determine who may or may not serve county residents. *South Carolina Elec. & Gas Co. v. Berkeley Elec. Coop., Inc.,* 306 S.C. 228, 411 S.E.2d 218 (1991); *City of Cayce,* 326 S.C. at 241–42, 486 S.E.2d at 94. The County's constitutional authority includes the power to grant or deny franchises, as well as the power to deny expansion of existing franchisees or utility providers. *City of Aiken,* 305 S.C. at 468, 409 S.E.2d at 404.

In *Berkeley Elec. Coop., Inc. v. South Carolina Pub. Serv. Comm'n,* 304 S.C. 15, 402 S.E.2d 674 (1991), our Supreme Court explained:

We reject Co-op's claim that, while a municipality may, itself, provide electric service within corporate limits, it may not designate a supplier through a franchise agreement. Our holdings in *City of Abbeville v. Aiken Elec. Co-op., Inc.* and *Blue Ridge Elec. Co-op v. City of Seneca* are dispositive of this issue.

In *Abbeville,* we rejected a municipality's claim that it had the right to oust an existing electric supplier upon annexation. We stated:

[A] franchisee possessing a valid PSC territorial assignment to serve an area which is subsequently annexed:

1. Is permitted to continue service in that area to those premises being served at the time of annexation;

2. Is prohibited, without prior consent of the municipality, from extending or expanding service in that area by the use of any streets, alleys, public property or ways after the date of annexation.

287 S.C. at 370–371, 338 S.E.2d at 836.

In *Blue Ridge,* we addressed an assigned supplier's challenge to a municipal utility which provided electricity in a newly annexed area. There, we held that "a municipality may either consent to expanded service by the assigned supplier or itself serve new premises and customers within the assigned, annexed area." 297 S.C. at 289, 376 S.E.2d at 517.

The basic premise upon which *Abbeville* and *Blue Ridge* rest is a municipality's right of consent under S.C. Const. Art. VIII, § 15. In *Blue Ridge,* we declined to interpret the Territorial Assignments Act, as amended by Act 431 of 1984, in a way violative of this right. We stated:

Absent the option of municipal service to new premises and customers in assigned, annexed areas, the assigned supplier would possess, for all practical purposes, an exclusive territorial service right. Municipalities could not realistically deny consent to expanded service by these assigned suppliers; denying consent would be tan-

tamount to denying property owners in the annexed area any electric service at all.

297 S.C. at 289, 376 S.E.2d at 517–518.

Here, Co-op's contention that a municipally-franchised utility should be distinguished from a municipally-owned utility effectually denies Summerville's right of consent, leaving Summerville with the sole alternative of permitting Co-op to provide the service. This would clearly violate *Abbeville* and *Blue Ridge, supra.*

Summerville has granted SCE & G its consent to serve the annexed area by virtue of the franchise agreement. Accordingly, Circuit Court correctly held that SCE & G may continue providing electric service to Hardee's.

*Berkeley Elec. Coop., Inc.,* 304 S.C. at 18–20, 402 S.E.2d at 676–77 (footnotes and emphasis omitted).

The Court addressed the efficacy of Article VIII, section 15 of the South Carolina Constitution in *City of Aiken v. Aiken Elec. Coop., Inc.,* 305 S.C. 466, 409 S.E.2d 403 (1991):

Article VIII, Section 15, of the South Carolina Constitution prohibits the General Assembly from enacting laws which grant the right to construct or operate upon the streets or property of a municipality without first obtaining the consent of such municipality.

This Court has affirmed the right of municipalities to authorize expansion of existing service or to provide alternative service. *See Berkeley Elec. Co–Op v. S.C. Public Service Comm'n,* [304 S.C. 15,] 402 S.E.2d 674 (S.C.Sup.Ct. 1991) (citing *Blue Ridge Elec. Co–Op v. City of Seneca,* 297 S.C. 283, 376 S.E.2d 514 (1989)); *City of Abbeville v. Aiken Elec. Co–Op,* 287 S.C. 361, 338 S.E.2d 831 (1985). When service to a new area is not provided by the municipality, the municipally assigned supplier possesses exclusive rights. Our holding in *Berkeley* makes no distinction between a municipally owned supplier and a municipally franchised supplier. Hence, service by a franchised supplier is considered municipal service.

We find that the City was within its constitutional authority to designate an electric service supplier for new custom-

ers in the annexed area and to enact ordinances affecting other suppliers of electricity. S.C. Const. Art. VIII, § 15. *City of Aiken,* 305 S.C. at 468, 409 S.E.2d at 404.

Article VIII, section 15 was further discussed in *City of Rock Hill v. Public Serv. Comm'n,* 308 S.C. 175, 417 S.E.2d 562 (1992):

Article VIII, § 15 of the South Carolina Constitution provides:

No law shall be passed by the General Assembly granting the right to construct and operate in a public street or on public property a street or other railway, telegraph, telephone or electric plant, or to erect water, sewer or gas works for public use, or to lay mains for any purpose, or to use the streets for any other such facility, without first obtaining the consent of the governing body of the municipality in control of the streets or public places proposed to be occupied for any such or like purpose.

We have interpreted this provision in several cases. In *City of Abbeville v. Aiken Elec. Co-op., Inc.,* 287 S.C. 361, 338 S.E.2d 831 (1985), we held that a municipality did not have the right to oust an existing electric supplier when the assigned area was subsequently annexed. However, we also determined that expansion by the use of any city street or public property by the supplier within the annexed area without the municipality's consent was prohibited. *Id.* In *Blue Ridge Electric v. City of Seneca,* 297 S.C. 283, 376 S.E.2d 514 (1989), the issue presented was whether a municipality could service new customers in an area assigned to another electrical supplier once the area was annexed into the city. We held that denying the municipalities the right to serve in the annexed areas would be tantamount to leaving the assigned supplier with an exclusive territorial right since the municipality would be faced with the choice of denying the property owners power or consenting to the assigned supplier's use of the streets and public ways for expansion of their service. As this would create an irreconcilable conflict between the Act 431 and municipality's rights under Article VIII § 15, we determined a municipality could not be enjoined from serving new customers within the annexed property.

In subsequent cases, this Court held the city's right to consent included the power to designate another supplier other than the municipal utility or the assigned supplier. *Berkeley Electric Co-op. v. South Carolina Public Service Commission,* 304 S.C. 15, 402 S.E.2d 674 (1991); *City of Aiken v. Aiken Elec. Co-op.,* 305 S.C. 466, 409 S.E.2d 403 (1991); *South Carolina Electric & Gas v. Berkeley Electric Cooperative, Inc.,* 306 S.C. 228, 411 S.E.2d 218 (1991). In these cases, we have implicitly acknowledged that without the ability to provide service or authorize another utility to provide service, the constitutional right to grant or withhold consent would be meaningless.

*City of Rock Hill,* 308 S.C. at 177–78, 417 S.E.2d at 563–64.

Section 4–9–30(11) of the South Carolina Code authorizes counties "to grant franchises and make charges in areas outside the corporate limits of municipalities within the county in the manner provided by law for municipalities and subject to the same limitations, to provide for the orderly control of services and utilities affected with the public interest." S.C.Code Ann. § 4–9–30(11) (Supp.2002). The Williamsburg County Council passed a franchise ordinance regulating the water franchises to various entities in Williamsburg County which became effective on August 7, 1995. In *Glendale Water Corp. v. City of Florence,* 274 S.C. 472, 265 S.E.2d 41 (1980), our Supreme Court approved of cities extending their water lines if they had a valid franchise from the County.

The issue of exclusivity of a franchise is vested in the governmental entity pursuant to Article VIII, sections 15 and 16 of the South Carolina Constitution. The General Assembly may enact legislation placing responsibility upon a governmental entity to act upon a request by a non-governmental entity to provide water and sewer services by denying or granting such a request under certain conditions and time parameters. Section 33–35–90 is the paradigm of a legislative act involving procedural responses mandated by a governmental entity to either provide water and sewer services or to allow a non-governmental entity to engage in these activities. This section was efficacious at the time of the filing of the application by Williamsburg Water. Because the County is bound by the "law of the case" doctrine in regard to the issue of consent, my analysis is limited to the facts of this case.

## CONCLUSION

I find that the issue of governmental consent by the County is controlled by the ruling of the circuit judge. His conclusion that Williamsburg Water gave proper and adequate notice under § 33–35–90 became the law of the case.

Based on the constitutional provisions and the evolving precedent extant in this field, I hold that Williamsburg Water is entitled to a *non-exclusive right* to provide water and sewer service to the areas designated in its proposal made pursuant to S.C.Code Ann. § 33–35–90. I rule the County has a *non-exclusive right* to provide water and sewer service in the areas designated in the proposal.

Accordingly, I **VOTE** to **AFFIRM** the order of the circuit court.

STILWELL, J. (concurring in result only):

Although I agree with the result of this case, I write separately to explain my reasoning, which differs from both the majority opinion and Judge Anderson's opinion concurring in result only.

The critical issue is whether Williamsburg Water's notice to the county and the county's action or inaction thereafter vested Williamsburg Water with the exclusive right to provide water service in the subject area or a non-exclusive right to provide such service. The trial court's order holding Williamsburg Water's authority to be non-exclusive came as a result of rather generic mutual motions for summary judgment, neither of which focused on the issue of whether the rights obtained were exclusive or non-exclusive. There may well be a genuine issue of material fact concerning whether the statute, Williamsburg Water's notice, and Williamsburg County's response or lack thereof creates exclusive or non-exclusive rights.

However, the status of this appeal is such that we are not able to address that issue. The question presented on appeal is whether the trial court erred in failing to find that Williamsburg Water had exclusive right and authority to serve within the specified area and Williamsburg Water's arguments all focus on its contention that it is so entitled. Thus, the issue as

presented is the functional equivalent of an appeal of the refusal to grant summary judgment, an issue that is not appealable. *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994); *Olson v. Faculty House of Carolina,* 354 S.C. 161, 580 S.E.2d 440 (2003).

Nowhere in Williamsburg Water's brief do I find an assertion that the court erred in ruling that Williamsburg Water's rights were non-exclusive. Because that finding was not appealed, it is the law of the case and not subject to review by this court. *ML–Lee Acquisition Fund, LP, v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997).

For that reason alone, I would affirm the trial court's ruling.

CONNOR, J., concurs.